KUTSCHE *v.* FORD.

1. SCHOOLS AND SCHOOL DISTRICTS—REFUSAL OF SUCCESSFUL BIDDER TO EXECUTE CONTRACT REQUIRES ADVERTISING FOR NEW BIDS.
   Where a school district advertised for bids for the erection of a school building and awarded the contract to the lowest bidder, the refusal of the successful bidder to enter into a contract rendered it necessary for the district to

readvertise for new bids, since it could not go back to the old bids and award the contract to the next lowest bidder.

2. SAME—ACCEPTANCE OF BID—REVOKING BID.·

Where the school district placed in the mail a letter accepting the contractor's bid before it received a letter from him withdrawing his offer, his contention that contract relations were precluded thereby cannot be sustained.

3. SAME—ACCEPTANCE BY MAIL SUFFICIENT.

In the absence of the designation of any particular method of notification of acceptance by the contractor, notice by mail was sufficient.

4. SAME—ACCEPTANCE OPERATIVE WHEN MAILED.

Acceptance of a contractor's bid by mail is operative from the moment that its transmission begins by depositing the letter in the post office, and depositing in the mail box instead of the post office was sufficient.

5. SAME—ACCEPTANCE PRECLUDES WITHDRAWAL.

The contractor had no right to withdraw his bid after notice of its acceptance by the school district was mailed.

6. EQUITY—MISTAKE—WHEN RELIEF WILL BE GRANTED — STATU QUO.

Where a mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed *in statu quo*, equity will interfere in its discretion, to prevent intolerable injustice.

7. MISTAKE—CONTRACTS—RESCISSION—REFORMATION.

A mistake on one side may be ground for rescinding but not for reforming a contract.

8. SCHOOLS AND SCHOOL DISTRICTS—CONTRACT—EQUITY WILL RELIEVE CONTRACTOR FROM CONSEQUENCES OF MISTAKE.

. In a suit by a contractor for the cancellation of his bid for the construction of a school house and the return to him of a check guaranteeing his executing a contract if awarded same, where it appears that in preparing his

bid he inadvertently omitted the cost of plastering, amounting to $6,400, therefrom, equity will relieve him from the consequences of his mistake; it appearing that the mistake has not made the school building cost more than it would had it not been made.

Appeal from Wayne; Wiest (Howard), J., presiding. Submitted January 3, 1923. (Docket No. 20.) Decided March 23, 1923.

Bill by Arthur W. Kutsche against John Ford and others, board of trustees of school district No. 5, Springwells township, for the rescission of a building contract. From a decree for plaintiff, defendants appeal. Affirmed.

*Ralph M. Tate*, for plaintiff.

*Frederick J. B. Sevald* (*Charles E. Duffy*, of counsel), for defendants.

PER CURIAM. The trial judge filed an opinion which we adopt:

"School district No. 5, Springwells township, Wayne county, wanting a new school building erected, according to plans and specifications prepared by architects, the school board advertised for competitive bids. Each bidder was required to deposit a certified check equal to five per cent. of the bid made, to be forfeited in case of acceptance of the bid and refusal of contract by the bidder. Plaintiff is a contractor and bidder residing in Detroit and after examination of the plans and specifications, prepared his estimates and on the day appointed for opening the bids filed his bid, proposing to furnish the necessary labor and material to complete the school building for the sum of $63,660. At the request of plaintiff the opening of bids was deferred an hour or so, in order that he might finish the preparation of his bid. Upon receiving plaintiff's bid, the school board, at the offices of the architects, proceeded to open all the bids filed,

some nine or ten in number, and finding plaintiff's bid the lowest, awarded him the contract and directed the architects to prepare the necessary contract and bond forms and to notify plaintiff of the acceptance and of the fact that the board would meet the next Saturday to approve his bond and execute the contract.    The bids were opened on Saturday and on Monday the architects mailed a letter to plaintiff by depositing the same in the mail box in the Union Trust Building, notifying him that he had been awarded the contract and that the bond forms were ready for signature and the school board would meet the next Saturday to execute the contract.

"The next day after filing his bid, and after it had been accepted by the school board, but before plaintiff knew that he had been awarded the contract, he went over his figures and discovered that he had left out of his estimate the cost for plastering the building, amounting to the sum of $6,400, according to an estimate that had been furnished him by a plasterer. Upon making this discovery he telephoned one of the architects and informed him of the mistake and said that he did not want the job at the price he had bid, and on Monday following the opening of the bids on Saturday, and before he actually received the letter notifying him that he had been awarded the contract, he prepared a letter, addressed to Mr. Haggerty, clerk of the school board, as follows:

" 'This is to inform you that we did not include the plastering in the new school building to be erected on Lois avenue, south of Michigan avenue, in our proposal to you of February 23.    This will amount to sixty-four hundred dollars, in addition to our figure submitted.

" 'We regret very much that this error was made and withdraw our former figure and ask that you return our certified check amounting to thirty-two hundred dollars.'

"Having prepared the letter, plaintiff went to the residence of Mr. Haggerty the same day, and being there informed that Mr. Haggerty was not at home, he left the letter with a lady he supposed to be Mrs. Haggerty.    Mr. Haggerty has never been married and on the day in question had a housekeeper, who is now dead, and he never received the letter.

"On Saturday the school board met to execute the contract and for the first time learned of plaintiff's mistake and that he would not enter into contract according to his bid, and thereupon the school board caused the check, given by plaintiff, to be cashed and the money is now on deposit to the credit of the school district. New bids were advertised for and the contracts let, a little over two weeks later, for the sum of $69,440, the plaintiff making no bid.

"Plaintiff files the bill herein to have his bid canceled and to save his deposit from forfeiture and asks that the school board be decreed to refund him the $3,200. The school board acted in good faith and without any knowledge or suspicion of the mistake made by plaintiff, and claim that plaintiff by refusing to execute the contract has made the school building cost the district $5,780 more than his bid, and insist that plaintiff should not be granted relief. Under the evidence it is clear that plaintiff inadvertently omitted from his estimate the cost of plastering.

"The refusal of plaintiff to execute the contract made new bids necessary as the board could not go back to the old bids and award the contract to the next lowest bidder. *Twiss* v. *City of Port Huron*, 63 Mich. 528. All the parties have acted in good faith.

"Upon this record can plaintiff be granted relief? I am satisfied that his remedy, if any, is to have rescission or cancelation of his offer or bid decreed.

"The point has been made that, upon acceptance of his bid and notice thereof by depositing the same in the mail, he could not withdraw his offer. Conceding such to be the law, it does not follow that the court may not grant rescission. It is undoubtedly true that, filing a bid, as plaintiff did, upon invitation, was an offer intended of itself, if accepted, to create legal relations beyond the power of one party to sever without liability, because no future negotiations were contemplated and nothing remained to be done beyond reducing the same to form strictly in accord with the accepted offer. But this does not put the matter beyond the power of the court of equity to relieve the plaintiff from the ruinous consequences of his mistake, provided the school district can be said to be left thereby *in statu quo*. It is also true that no contract

relation existed until notice of acceptance of the bid was given plaintiff.

"Plaintiff contends that, the notice, to be sufficient, had to be received by him in fact, and he is not to be held to have had notice of acceptance from the time the letter giving it was placed in the mail for transmission, and therefore his letter withdrawing his bid precluded contract relations. This position cannot be maintained. His letter of withdrawal was never received by Mr. Haggerty. Revocation, to warrant release, must be shown to have been received by the other party.

"The question of whether the notice of acceptance of the bid dates from the mailing of the letter, is interesting, and while not of decisive importance in this case, the matter having been argued, I shall express an opinion thereon.

"No particular method of notification of acceptance having been designated by plaintiff, the school board had a right to make the service by mail. *Wilcox* v. *Cline*, 70 Mich. 517.

"'One who makes an offer, knowing that it is to be accepted when the offeree is not in personal communication with the offerer, contemplates acceptance by mail or telegraph with the corresponding legal consequences.' 1 Page on Contracts (2d Ed.), § 211.

"The great weight of modern authority is to the effect that the acceptance is operative, if made by mail, from the moment that its transmission begins. *Patrick* v. *Bowman*, 149 U. S. 411 (13 Sup. Ct. 811, 866); *Brauer* v. *Shaw*, 168 Mass. 198 (46 N. E. 617). Depositing the letter in the mail box instead of the post office was sufficient, being according to commercial usage and common business methods. *Wood* v. *Callaghan*, 61 Mich. 402 (1 Am. St. Rep. 597). The bid made by plaintiff was beyond his withdrawal as soon as notice of its acceptance was mailed.

"This brings me to the question of whether this court should grant rescission of the contract relations growing out of the bid and its acceptance. Upon this question I have examined many adjudged cases, and at first I was struck with the apparent want of harmony existing in the decisions, but upon more

mature reflection and having in mind the true line of distinction pointed out in the case I shall take the liberty to make practically the opinion in this case, the lack of harmony disappears to a great degree. The governing rule in the instant case is so well stated and reasoned in the late case of *St. Nicholas Church* v. *Kropp*, 135 Minn. 115 (160 N. W. 500, L. R. A. 1917D, 741), that I adopt it as decisive herein.

"In that case:

" 'Plaintiff, a religious body, desired to erect a church. It advertised for bids. Carl Kropp and two others responded. Each bid was accompanied by a certified check in the sum of $1,000 to insure the entering of a contract by the successful bidder to build the church according to the plans and specifications upon which bids were made. When the three bids were opened in the presence of the bidders, Kropp's being for $30,973, was found to be the lowest—about $3,900 below the next highest. Thereupon the committee of plaintiff, in charge of the building of the church, voted to award the work to Kropp, and notified him that his bid was accepted. The contract was not then drawn, owing to the illness of the architect. The same day Kropp, on his return home, discovered that through some oversight the item of the structural iron required in the building had not been included in the bid. The value of furnishing this in place was estimated at $2,350. The next day he notified the building committee of his mistake, and that he could not enter the contract unless he received at least $2,000 more than the bid. This the committee declined to give. Kropp refused to enter the contract and stopped payment of his certified check. The erection of the church building was awarded to one Lange for $32,775 on a belated bid received three or four days after the others had been opened. This action was brought by plaintiff against the bank upon which the check was drawn. The bank answered, deposited the amount of the check in court, and asked the court to require Kropp to interplead. This was done. * * *

" 'Kropp was not entitled to the fund in court unless he could be relieved from the effect of the acceptance of his bid. This depends strictly upon the power of a court of equity to grant relief. His offer had been accepted. This made at least a preliminary contract. *Tunny* v. *City of Hastings*, 121 Minn. 212 (141 N. W. 168). As part thereof he had agreed that this fund should belong to plaintiff in the event that he refused to enter the contemplated contract. It would seem clear that

a strictly legal action based on the ownership of the fund could not be maintained by Kropp so long as a legal acceptance of his bid stood in the way. In fact, his whole appeal for redress in this court is related on the proposition that a court of equity may, in certain cases where a court of law is powerless, grant relief, and that this is such a case. \* \* \*

" 'The jury and court found that, in his bid, Kropp had made an honest mistake without negligence. The mistake amounted to more than $2,000. Does this entitle him to any relief, when plaintiff was not to blame in any way for the mistake, and had no knowledge that Kropp had made it? We think that the facts herein bring the case within this principle governing a unilateral mistake stated in 1 Story, Equity Jurisprudence (12th Ed.), § 138:

" ' "But where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed *in statu quo;* equity will interfere, in its discretion, to prevent intolerable injustice." \* \* \* In *Hearn* v. *Insurance Co.*, 20 Wall. (U. S.) 488, it is said:

" ' "A mistake on one side may be ground for rescinding, but not for reforming, a contract." \* \* \*

" 'The question here is whether a mistake of over two thousand dollars in the bid upon the construction of this church is merely incidental or fundamental. We think the amount is so large that it is unreasonable to suppose that Kropp would have made the bid he did make, if he had known that the structural iron work was not included therein. Here the finding is that it was an honest mistake made without negligence. Plaintiff was apprised of the error at once. No intervening rights accrued. The belated bid which plaintiff accepted was a trifle less than the one Kropp intended to make. There can be no question of not placing plaintiff *in statu quo.* It did nothing in reliance upon Kropp's bid, and did not change its position in the least between the time it notified him of acceptance and the time it received notice of his mistake.'

"Here the court reviewed the authorities and held that the bid be rescinded and canceled and the fund in court be awarded to Kropp.

"In *Board of School Commissioners* v. *Bender*, 36

Ind. App. 164 (72 N. E. 154), the contractor or bidder placed his estimate upon different portions of the work, on separate pages of his estimate book, and in his hurry he turned two pages instead of one and thus omitted to carry forward, in his aggregate bid, a material portion of his estimate, and it was held not equitable to permit the plaintiff board to profit by the mistake.

"In *Bromagin & Co.* v. *City of Bloomington,* 234 Ill. 114 (84 N. E. 700), relief was granted the bidder because of a mistake arising from inadvertently using the weight per foot of iron pipe for its price per foot, making a mistake of $6,000.

"In *Barlow* v. *Jones* (N. J. Ch.), 87 Atl. 649, the bill was filed to enjoin the collection of a check deposited with a building commission appointed to erect a court house.  The complainant's bid was accepted; but he, upon discovering that his proposal was $28,769 less than he intended it should be, declined to execute the contract.  In making up his estimate he overlooked an item of $28,000 furnished him by an intended sub-contractor.  The court said:

" 'Whether equity will relieve in any particular case must be determined by the importance of the mistake—whether it can be rectified without injurious results to the other party who may have assumed obligations or changed his posture upon the supposition that the contract was a valid and enforceable one, and whether the mistake was or was not the product of gross negligence on the part of the party asking relief.  *  *  * There has been no change in the status of the parties induced by the belief that Barlow would execute his contract.'

"The court annulled the contract arising from the bid and the acceptance thereof and directed the delivery of complainant's check to him.

"In the instant case it may be thought that the school district cannot be said to be placed *in statu quo* when it is considered that the building cost nearly six thousand dollars more than plaintiff's bid.  To place *in statu quo* does not mean that one shall profit out of the mistake of another.  It does not appear that plaintiff's mistake has made the school building cost more than it otherwise would have cost.  The school district, if placed back where it was before the bid,

loses nothing except what it seeks to gain out of plaintiff's mistake. To compel plaintiff to forfeit his deposit, because of his mistake, would permit the school district to lessen the proper cost of the school building at the expense of plaintiff, and that, in equity, is no reason at all for refusing plaintiff relief.

"An examination of the authorities leads to the conclusion that, under the evidence the plaintiff should have relief, and he is granted a decree rescinding and canceling the bid, and contract arising out of its acceptance, and adjudging that the defendant school district pay to him the $3,200, without interest, and that he have process for the enforcement of the same. It being considered that the cost of readvertising for bids ought to off-set the costs herein, no costs are awarded."

The bill of complaint is against the school district, and prays relief against it. The process is directed to the officers of the district as such, and the answer is by them. Because of this discrepancy a motion to dismiss has been made here by counsel for the defense. The trial was upon the theory of the bill of complaint. The matter was not brought to the attention of the trial judge. Hence the motion is denied.

Decree affirmed, with costs of this court to plaintiff.

WIEST, C. J., and CLARK, J., did not sit.