TALBOT & MEIER *v.* BOARD OF EDUCATION, DISTRICT. NO. 1, FRACTIONAL, PLYMOUTH TOWNSHIP.

1. CORPORATIONS—BOUND BY ACT OF PRESIDENT.

    Corporation making bid for construction of schoolhouse through its president who controlled it was bound by act of president in executing settlement agreement releasing it from its bid whereby it was hoped to save it substantial sum of money, although agreement does not bear signature of corporation as such.

2. CANCELLATION OF INSTRUMENTS—COMPROMISE AND SETTLEMENT— STATU QUO.

    Corporation executing settlement agreement by its president is not entitled to cancellation thereof, where other party acted thereon and cannot now be placed *in statu quo*.

3. SCHOOLS AND SCHOOL DISTRICTS—RELEASE OF BIDDER—CONSIDERATION—APPROVAL OF PLANS.

    Settlement agreement whereby school board released bidder from going on with its bid to erect schoolhouse and returned part of money deposited as guaranty that it would enter into contract is not void for want of consideration because plans for schoolhouse had not been approved by superintendent of public instruction as required by 2 Comp. Laws 1915, § 5874.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted April 15, 1930. (Docket No. 122, Calendar No. 34,966.) Decided June 2, 1930.

Bill by Talbot & Meier, Inc., a Michigan corporation, against Board of Education, District No. 1, Fractional, Plymouth township, Wayne county, Michigan, to cancel a bid and secure return of a deposit. From a decree for plaintiff, defendant appeals. Reversed.

*Frank C. Cook* and *John P. O'Hara* (*John F. Wagner,* of counsel), for plaintiff.

*Lucking, Van Auken & Sprague,* for defendant.

NORTH, J. Plaintiff and 16 other contractors submitted to the defendant school board bids for the erection of a school building. As evidence of good faith and a guaranty that the successful bidder would enter into the contemplated contract, furnish bond, etc., each was required to deposit along with his bid five per cent. of the amount thereof. Plaintiff delivered to defendant in connection with his bid a cashier's check for $5,100. The day the bids were opened, February 28, 1927, Mr. Edwin E. Meier, president of the plaintiff company, was orally informed that plaintiff's bid of $98,195 was the lowest, and had been accepted by the board. The bid next lowest was made by the Townsend Company at $99,900. Two days after the bids were opened Mr. Meier discovered that through a mistake he had made, an item of $20,151 was omitted from the amount of plaintiff's estimate and bid. In tabulating the various items of this bid, Mr. Meier, using an adding machine with which he was not familiar, struck the "total" key instead of the "sub-total" key, which resulted in failure to carry

forward the total of the first page items, thus leaving $20,151 out of the final total. Defendant's architects were immediately notified of the mistake, and that plaintiff "could not go ahead with the job." The next day Mr. Meier met with the defendant board. After a somewhat extended conference, at which the manner of making the mistake was explained and Mr. Meier asked the return of the cashier's check, he was informed that the most the school board could do for him was to retain from the amount of the check the difference ($2,929) between plaintiff's bid and that of the next bidder, which in the meantime had raised its bid to $101,124, and return the balance ($2,171) to Mr. Meier. The only other alternative offered Mr. Meier was the forfeiture of the full amount of the check. In this connection Mr. Meier testified:

"I asked for time. I said that the thing could not very well be settled at the time, and Mr. Henderson (president of the school board) told me that they demanded a decision right then and there, because the completion time for the job was short, and they would have to know before I left the meeting what my decision was. I didn't go down there with the intention of getting into any discussion with them about the thing, and I was forced to go into the matter. In view of the fact that the entire check was to be lost, or part of it might be saved, and they demanded a statement from me, personally, I signed the paper with my personal signature, I signed the agreement between the board and myself. Exhibit seven is an agreement between the Board of Education, Plymouth, and myself."

The material portion of Exhibit 7 reads:

"1st. In consideration of the acceptance of the contract on the Starkweather School in District No. 1 Fractional, Plymouth Township, Wayne

County, Michigan, by the Townsend Company, Contracting Engineers of Ypsilanti, Michigan, for the amount of $101,124, the Board of Education agrees to release to the party of the second part the sum of $2,171, which is the difference between their bid of $98,195 plus their guarantee of $5,100—total of $103,295 and the sum paid to Townsend Co. for contract of $101,124.

"2d. The release is to be made by the party of the first part upon the approval of contract of construction of school and acceptance of bond upon the same by the party of the first part.

* * *

(Signed) "H. W. HENDERSON, President.
"ADA S. MURRAY,
"W. H. SUTHERLAND,
"Party of the 1st Part.
"EDWIN E. MEIER,
"Party of the 2d Part."

Following the execution of Exhibit 7, plaintiff consulted counsel, who in its behalf by registered mail on March 7th demanded return of the full amount of the $5,100 check, and refused to be bound by the adjustment incident to which Exhibit 7 was executed. March 9th defendant mailed plaintiff a check for the balance provided in Exhibit 7, $2,171. It was not accepted. The Townsend Company constructed the building at the contract price above quoted. After repeated demands for the return of the full amount of its deposit, plaintiff filed this bill in chancery (May 17, 1927), praying cancellation and rescission of its bid and return of the $5,100 deposit. Defendant answered and denied plaintiff was entitled to relief. Plaintiff had decree, and defendant has appealed.

Plaintiff bases its claim to relief on the ground that the mistake above outlined was made by it

without gross negligence on its part, and that the defendant seeks to take an unconscionable advantage of plaintiff in consequence of its mistake; citing and relying upon *Kutsche* v. *Ford,* 222 Mich. 442. Further, plaintiff claims that, since it is a corporation, it is not bound by the settlement embodied in Exhibit 7, because Mr. Meier had no authority to act for the corporation in making such a settlement, and the instrument bears the personal signature of Mr. Meier and not the signature of the corporation.

If plaintiff is bound by the settlement, it is conclusive of this controversy, and we will therefore give this phase of the case first consideration. There can be no question that Mr. Meier had principal supervision and control in making and tendering this bid; and when he attended the meeting of the school board at which the bids were opened, as well as when he attended the meeting three days later, he was there as the representative of Talbot & Meier, the corporation. The fact that the bid was being tendered by or in behalf of a corporation was not mentioned. But Mr. Meier did mention the fact that Mr. Talbot had died some two months previously. Some members of the school board assumed Talbot and Meier were partners. Before the meeting of March 3d, the matter of this mistake was taken up with other members of the corporation. Obviously it was in reference to this and this alone that Mr. Meier was requested to meet with the board on the above date. There is no showing of the specific corporate action authorizing Mr. Meier to tender the bid for the plaintiff company in the first place; but the only fair inference to be drawn from this record is that such conduct, as well as his subsequent conduct in adjusting this matter, was within the scope of his authority as a rep-

resentative of the corporation, and that the exercise of such authority was acquiesced in by the other members of the corporate body. That Mr. Meier was the dominating factor in this corporation and that its affairs were somewhat informally conducted is the only conclusion fairly deducible from the record. He had been president of the company since its incorporation in 1921. There were only 11 stockholders. Mr. Heinkelman was the secretary and treasurer, but he was inactive. Certain other stockholders were also wholly inactive. Of the 8,400 shares of outstanding common stock, Mr. Meier was the owner of 2,500 and his wife of 900. Another stockholder was a brother of Mr. Meier; still others were office employees, subject to Mr. Meier's control, and holding stock which was not paid for and subject to plaintiff's option to repurchase when their employment ceased. The board of directors, according to Mr. Meier's testimony, consisted of himself and the inactive Mr. Heinkelman. These and other facts and circumstances appearing in the record force the conclusion that Mr. Meier controlled the corporation, and that he was acting well within the scope of his usual authority as a representative of the corporate body when he executed Exhibit 7. It is true this exhibit does not bear the signature of the corporation as such; but there can be no doubt that in executing the instrument Mr. Meier was acting in behalf of the corporation, and hoped by the transaction to save for it a substantial amount of money. The corporation for which he acted is now in a court of equity seeking equitable relief, and it cannot be heard to disavow this phase of the transaction. In this case the corporation was clearly bound by the act of its president. *Cope-Swift Co.* v. *Schlaff Creamery Co.*, 223

Mich. 543; *Garfield* v. *Mansfield Steel Corp.*, 223 Mich. 694; and *Murphy* v. *Frank P. Miller Corp.*, 229 Mich. 162.

It was obviously on the strength of this supposed settlement that the defendant school board then and there entered into a contract for the construction of this building which cost the school district nearly $3,000 more than the amount of plaintiff's bid; and this amount was in excess of the amount originally bid by plaintiff's nearest competitor for this job. There is no way of telling whether defendant could or could not have secured a more favorable bid by readvertising; but relying upon the supposed settlement embodied in Exhibit 7, the defendant released the plaintiff and entered into another contract. Defendant relied upon and acted upon the settlement made with plaintiff acting through its president, and plaintiff should not be granted equitable relief based on a disavowal of such settlement. In arriving at this conclusion, we have not overlooked the portion of the record from which it appears that the bid made in behalf of the plaintiff and the check tendered as a deposit disclosed, at least by inference, its corporate character; but this circumstance does not materially alter the equities of the case.

As noted above, plaintiff cites and relies upon *Kutsche* v. *Ford, supra,* but this decision is not in point because the issue here is controlled by a subsequent binding contract (Exhibit 7) entered into by these parties, and relied upon and acted upon by the defendant. Further, in the instant case, if plaintiff were to be granted cancellation as sought, the defendant would not be placed *in statu quo*.

Plaintiff also urges that there was no valid consideration for the settlement agreement, because the plans for this building were not approved by the

superintendent of public instruction until on or about March 10, 1927; and it is claimed the Townsend Company began its work prior to that date. In this position plaintiff relies upon our decisions in *Ulrich* v. *School District*, 228 Mich. 479, and *Geister* v. *School District*, 243 Mich. 357, and the statute, which provides:

"No school house shall hereafter be erected in any school district in this State * * * until the plans and specifications for the same shall have been submitted to the superintendent of public instruction and his approval indorsed thereon." 2 Comp. Laws 1915, § 5874.

A complete answer to this claim, if it can be urged at all in behalf of plaintiff, is that since the agreement of March 3d consisted of a complete settlement of the controversy between these parties, there was ample consideration to support it entirely independent of the Townsend Company contract. But it may be added that this record does not sustain plaintiff's contention that the erection of this building was undertaken in any substantial way prior to the approval of the plans and specifications by the superintendent of public instruction. At most the testimony discloses only a small amount of excavating done prior to the approval, but no actual construction. There is no equity in plaintiff's attempt to avoid on this ground its settlement with the defendant.

The decree of the lower court is reversed, and one may be entered here dismissing plaintiff's bill of complaint, with costs of both courts to the appellant.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.