## MICHIGAN MILLERS MUT. FIRE INS. CO. v. GRANGE OIL CO. OF LINN AND BENTON COUNTIES.

No. 12114.

United States Court of Appeals
Ninth Circuit.

June 23, 1949.

See also 175 F.2d 544.

Griffith, Peck, Phillips & Coughlin, James K. Buell, Portland, Oregon (Heineke & Conklin, Chicago, Illinois, of counsel), for appellant.

Weatherford & Thompson, Mark V. Weatherford, Albany, Oregon, and Hart, Spencer, McCulloch, Rockwood & Davies, Hugh L. Biggs, William W. Wyse, Portland, Oregon, for appellee.

Before STEPHENS, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

This appeal is from a judgment awarding appellee the sum of $16,352.20, balance due on a fire insurance policy.

The policy was of the provisional stock type, designed to provide coverage for a fluctuating stock of goods in such a manner that the goods are at all times fully protected but never over-insured when the stocks are low. By its terms the insured was required to make monthly reports of the value of stock on hand and the amount of non-provisional insurance carried on the stock. The coverage of the provisional policy, with certain qualifications noted later herein, was the difference between these two amounts. Premium adjustments were to be made annually.

The value of the stock destroyed by fire is admitted to be $121,410.31. During the period in question appellee was actually carrying non-provisional insurance in the sum of $33,333.00. Through mistake appellee reported the amount of non-provisional insurance as $50,000. In settling for the fire loss appellant used $50,000, the amount of the reported non-provisional insurance, in arriving at its liability. Appellee contended, and the trial court found, that $33,333, the actual amount of non-provisional insurance carried by it, should have been used.

A solution of the problem presented requires recourse to the terms of the insurance contract. The contract must be construed so as to effect the intent of the parties. The policy, including the standard stock form attached thereto, sets forth in §§ 5A, 5B, 5C and 5D, of paragraph 5, a specific formula to be followed in ascertaining the amount of insurance in force at a given time.

Section 5A reads: "As of the time at which insurance in force is to be determined, ascertain the value, as defined in paragraph 4, in such location." The value of the stock, as defined in paragraph 4, is admitted to be $121,410.31.

Section 5B reads: "Deduct from this value the amount of any non-provisional insurance against the hazards covered hereunder on said stock." It is agreed that the actual amount of non-provisional insurance in effect at the time of the loss was $33,333. The sum of $88,076.96, obtained by deducting from the value of the goods the actual amount of non-provisional insurance, in accordance with § 5B, is less than the "limit of insurance" within the meaning of § 5D [1]

---

[1] Paragraph 5.

"Section 5C. If through error, omission or otherwise the statement of value last filed by insured in accordance with the provisions of Paragraph 3 shall be less than the actual value as ascertained upon the same Saturdays for which said statement of value was filed, the amount as determined by Sections 5A and 5B shall be further reduced by the difference

and is the amount, less salvage, to which appellee claims it was entitled.

Appellant, on the other hand; contends that § 5C entitles it, appellant, to a further deduction in computing the amount of insurance, to the extent of appellee's overstatement of non-provisional insurance, to-wit, $16,667.00. The argument is that the words "statement of value last filed by insured in accordance with the provisions of paragraph 3" refer to the documentary report called for in paragraph 3, which includes both the value of the stock on hand and the amount of non-provisional insurance on such stock. By subtracting the latter from the former the result obtained is claimed by appellant to be an under-reporting of value of stock within the contemplation of § 5C.

Section 5C protects the insurer from under-reporting of value of stock by the insured, but in no manner does it concern the reports of non-provisional insurance. This remains true even though appellant's contention that the term "statement of value" refers to the entire report rather than the value of insured stock, be accepted. The report contained one column for listing stock values and another for non-provisional insurance. Applying the provisions of § 5C, which operates only in the event the statement of value is "less than the actual value", the statement of stock value, made by appellee, is admittedly correct and the statement of the amount non-provisional insurance was not *less* but *more* than the actual amount held.

A sound construction of the phrase "statement of value" as used in § 5C is to hold that it relates to reports of insured's stock values. Paragraph 4 reads in part "\* \* \* wherever the term 'value' is used in this form it shall apply in the manner set forth in sections (4a), (4b) and (4c) \* \* \*".[2] These sections limit the term "value" to the value of the stock and not an arithmetical sum of stock values and the amount of non-provisional insurance.

Again, in § 5A the word "value" is used. There it obviously refers to the value of the stock; otherwise no necessity for § 5B to call for a deduction of the amount of non-provisional insurance would exist.

In paragraph 7 of the policy it is stated that: "The premium earned \* \* \* shall be determined \* \* \* based on the average of values filed \* \* \* but no premium shall be charged \* \* \* on any value protected by non-provisional insurance against the hazards covered hereunder reported in accordance with paragraph 3." The term "average of values" as used in the above context again must refer to the value of the stock; otherwise the ensuing qualification with respect to non-provisional insurance would be redundant. The word value, as used in various places in the policy, is thus seen to consistently require a reference to value of the stock without regard to deductions of non-provisional insurance amounts.

Appellant complains that it cannot collect a premium for the additional coverage resulting from the overstatement of non-provisional insurance because paragraph 7 prohibits premiums on values protected by non-provisional insurance "report-

---

between the average of value so filed (including estimated amount, if any) and the average of actual values as ascertained for the same Saturdays.

"Section 5D.1. If the amount determined by Sections 5A, 5B and 5C is less than the "Limit of Insurance" named in the 'Schedule Endorsement', at such location, the amount thus determined shall be the 'Amount of Insurance under this form'.

2. If the amount determined by Sections 5A, 5B and 5C is equal to or greater than the 'Limit of Insurance' named in the 'Schedule Endorsement' at such location, the amount of the 'Limit of In-

surance' so named shall be the 'Amount of Insurance under this form'. "

[2] Paragraph 4:

\* \* \* "(4a) The value of stock, other than that manufactured by the insured, held for local or retail sale or for manufacturing purposes shall be the cost of replacing such stock.

"(4b) The value of stock, other than that manufactured by the insured, held for shipment shall be the established cash shipping value of stock of like grade and quality.

"(4c) The value of stock manufactured by the insured shall be the average carlot selling price."

ed in accordance with paragraph 3." It is sufficient to say that the $50,000 amount of non-provisional insurance was not reported in accordance with paragraph 3, since that paragraph requires a truthful statement.

Reduced to simple terms the contract of insurance in this case is not ambiguous. It was designed to meet a situation not covered by ordinary insurance. In the business conducted by appellee the value of the stock on hand fluctuated from week to week and month to month. This form of insurance gave a maximum of protection. It was the desire of appellee to have full protection at all times. Appellant undertook, for a fee, to furnish that protection. What did appellant agree to do? Simply to afford insurance on the value of the stock carried less the amount of insurance carried by appellee in other policies. Appellee agreed to pay a premium on that value. These parties, in entering into the contract, acted in good faith; hence, what did they intend? We think nothing more or less than coverage for actual values less a deduction of the actual amount of other insurance carried by appellee. An honest mistake was made by appellee in reporting. What did appellant stand to lose in the event the error was not discovered? Loss of premium payments. The error has been discovered and appellant can and will be placed in the same position it would have been had the error not been made. In fact the premium rate was adjusted on an annual basis and who can say that the error would not have been discovered before the date of adjustment arrived. Appellant was at all times in a position to protect itself by demanding proof of the amount of non-provisional insurance carried; quite a different situation from a report on values. The opportunity for fraud in the reporting of values exists to an extent where an insurer is unable to readily protect itself and it is to the prevention of such fraud the terms of the policy are primarily directed.

Appellant, while conceding that no fraud exists in the instant case, argues that unless the appellee be held to strict accountability for its honest mistake, fraud may be encouraged in other instances. We fail to understand how a recognition of the fact that an honest mistake has not violated the terms of a contract can in any manner encourage fraudulent dealings. Where transactions are tinged with fraud courts are quick to strike them down and that is what the courts did and why they did it in the cases cited by appellant. Wallace v. World Fire & Marine Ins. Co., D.C., 70 F.Supp. 193, affirmed by this court without opinion in 166 F.2d 571, is not in point. While that case did involve a provisional stock form insurance policy, the insured there understated the values of his stocks, so that the "honesty clause", similar to § 5C in the instant case, directly applied. In this case the stock values were correctly reported, and hence, § 5C has no application. Other cases cited by appellant, as we have said, involve fraudulent misrepresentations, and invoke an entirely different set of legal principles.

Appellant argues that failure of appellee to make correct reports of non-provisional insurance constituted a breach of a promissory warranty. There is no stipulation, provision or agreement in the insurance policy to the effect that appellee's failure to furnish true reports shall constitute a condition or warranty. Such a stipulation, provision or agreement is required under the laws of Oregon (which control here), in the absence of which, the provisions in the policy under consideration in this case must be construed as a simple covenant. Walker v. Fireman's Fund Insurance Co., 114 Or. 545, 234 P. 542.

Judgment affirmed.