**ROLANE SPORTSWEAR, INCORPORATED, Plaintiff-Appellant,**

*v.*

**UNITED STATES FIDELITY & GUARANTY COMPANY, Equitable Fire & Marine Insurance Company, Old Colony Insurance Company and Insurance Company of North America, Defendants-Appellees.**

**No. 18258.**

United States Court of Appeals
Sixth Circuit.

Feb. 18, 1969.

John S. Porter, Memphis, Tenn., for appellant; Burch, Porter & Johnson, Charles O. McPherson, Memphis, Tenn., on the brief.

Ernest E. Rosenberg, New York City, and Armistead F. Clay, Memphis, Tenn., Rein, Mound & Cotton, New York City, on the brief, for defendant-appellee, Equitable Fire & Marine Ins. Co.

Before PHILLIPS, EDWARDS and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a judgment of the District Court, entered after a trial without a jury, holding that appellees, four insurance companies, had fully discharged their respective liabilities

to appellant, Rolane Sportswear, Inc., by paying into court the sum of $110,096.-12.

The facts as found by the District Court are adopted. On March 30, 1965, certain fabrics owned by appellant were damaged or destroyed by fire in a factory in Ridgely, Tennessee, where they were being processed into wearing apparel. It was agreed by all parties that the value of the damaged goods immediately before the fire was $742,158.-00 and that the amount of damage caused by the fire was $351,586.46, computed by subtracting the salvage value of the goods from their original value.

Six companies, including appellees, had insured these goods, effective December 1, 1964, against damage of this type. The insurance policies are identical, except for the percentage of loss covered, and are of a type known as "monthly reporting policies." Paragraph 11 of these policies [1] required appellant to report in writing, within thirty days after the last day of each calendar month, the value of that portion of inventory at the Ridgely factory which it wished to have covered by the policies.[2]

On March 5, 1965, more than three months after the policies became effective, Richard Schaedle, the agent through whom appellant had obtained the policies, sent a letter to Mrs. Roseman, secretary of appellant corporation and general manager of the Ridgely factory, requesting that the required value reports be filed. Mrs. Roseman delegated that responsibility to Mrs. Robinson, her bookkeeper, and instructed her to call appellant's New York office to obtain the necessary inventory figures. Having done so, Mrs. Robinson wrote the following information at the bottom of Schaedle's letter and returned it to him:

Jan. $363,000.00
Feb. $369,000.00
March due April 1.
The above is the monthly report for Inventory Ins.

When Schaedle received this information, he was unable to tell whether it improperly included the inventory at a factory in Hickman, Kentucky, a location not within the coverage of the policies. Upon his direction, his secretary called Mrs. Roseman and was told that the Hickman inventory had been

---

1. Paragraphs hereinafter cited refer to Paragraphs of the policies. Paragraph 11 provides in part:

 11. Value Reporting Clause—It is a condition of this policy that the insured shall report in writing to this Company not later than thirty (30) days after the last day of each calendar month, the exact location of all property covered hereunder, the total actual cash value of such property at each location * * *. At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values * * * filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, this policy shall cover only at the respective locations specifically named herein and for not exceeding 75% of the applicable limit of liability of this Company specified in the Limit of Liability Clause.

2. Judge Soper, speaking for the court in Peters v. Great American Insurance Co., 177 F.2d 773 (4th Cir. 1949), stated of a similar policy:

 Monthly reporting insurance is a device whereby the amount of insurance under the policy fluctuates with the value of the changing stock of merchandise in a going business. It is designed to afford complete coverage and at the same time to avoid the maintenance of insurance in excess of the value of the property insured, so that the amount of the insurance, and the amount of the premium to be paid, are in direct proportion to the value of the goods on hand. Such a policy is obviously more favorable to the insured than a policy for a specified amount where the premium is calculated on the amount of insurance named in the policy although the amount of the risk may be materially less from time to time during the life of the contract. 177 F.2d at 774.

included, and that its value for both January and February was $60,000.00. Accordingly, his secretary reduced each of the reported figures by that amount and prepared, signed, and mailed report forms containing the corrected amounts to the insurers.

After the fire at the Ridgely factory, it was determined that the figures which Mrs. Robinson had sent to Schaedle were understated[3] by $200,-000.00 for both January and February. Under Paragraph 12,[4] the insurance companies are liable only for that proportion of any loss which the last reported value filed prior to the loss bears to the actual value of the inventory on hand on the date for which the report was made. The purpose of this provision is to allocate the risk of loss proportionately between appellant and the insurers in the event appellant should report for coverage only a part of the inventory actually on hand on a given reporting date and thereby reduce its premium expense. Since the actual value of the inventory at the Ridgely factory on the last day of February, 1965, was $690,743.21, the insurers determined their collective liability under the policies to be $157,280.18[5]. Appellees' share of this amount, $110,280.12, has been paid into court.

The District Court found in its original unpublished opinion that, appellant was bound by the value reports filed by Schaedle since he was a fire insurance broker, and therefore, the agent of the insured. The court also found that appellant was not entitled to reformation or rescission of the value reports, and that the term "loss", as used in Paragraph 12, meant the initial value of damaged goods less their salvage value. Upon a motion for a new trial, the court reconsidered its first finding and in a subsequent opinion, also unpublished, determined that Schaedle was the agent of the insurers and not a broker. The court further found that the value reports, as corrected by Schaedle's secretary, were sufficient under the terms of the policies and that appellant was bound by them. In all other respects the court reaffirmed its earlier opinion.

■ Jurisdiction is based on diversity of citizenship and the law of Tennessee controls. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ The first question which we consider on this appeal is whether appellant made any of the *written* value reports required by Paragraph 11 prior to the fire at the Ridgely factory. If it did not, the insurers would be liable for the entire loss caused by the fire.[6] It is clear that the figures contained in the letter which

---

3. The District Court found that "[t]hese figures were not the accurate values of the inventories due to a combination of internal mistakes, indifference and incompetence within the plaintiff organization."

4. Paragraph 12 provides in part:
 12. Full Reporting Clause—Liability under this policy shall not in any case

exceed the proportion of loss (meaning the loss as provided in the Excess Clause at the location involved), which the last reported value filed prior to the loss * * * at the location where any loss occurs bears to the total actual cash value * * * at that location on the date for which report is made.

5. This determination was made in the following manner:

$$\frac{\$309,000.00 \text{ (amount last reported)}}{\$690,743.21 \text{ (amount on hand at last report)}} \times$$

$$\$351,586.46 \text{ (value of damaged goods immediately before fire less their salvage value)}$$

$$= \$157,280.18 \text{ (liability of insurers)}$$

6. If no value reports are filed by appellant, Paragraph 11 provides that the effective limit of liability shall be 75% of the policies' maximum coverage limit. *See*

note 1, *supra*. In the instant case this would result in total coverage of the loss incurred by appellant.

Mrs. Robinson sent to Schaedle were intended to constitute written value reports. Her notation below these figures removes any possible doubt as to their intended function. Appellant contends that since her reports failed to separate the inventory at the Ridgely factory from that at the Hickman factory, as had been requested,[7] and that since Schaedle knew this, they were insufficient to satisfy the requirements of Paragraph 11. However, the District Court found that during a subsequent telephone conversation Mrs. Roseman and Mrs. Robinson "authorized and directed" Schaedle's secretary to delete $60,000.00 from the inventory amounts stated in the letter so that the reported amounts would correctly reflect the inventory on hand at the Ridgely factory.

■ Appellant claims that Schaedle's secretary was without legal capacity to act for it and, as a result, appellant did not file any *written* reports sufficient to satisfy the requirements of Paragraph 11. Appellant relies on T.C.A. § 56–705, which provides in part:

Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured * * * but this section shall not apply to licensed fire insurance brokers.

■ We hold that this statute did not prevent appellant from constituting Schaedle's secretary its agent for the limited purpose of making specific ministerial corrections in its inventory reports under the circumstances of this case and, therefore, appellant did file written value reports within the meaning of Paragraph 11. The purpose of the statute, as articulated by the courts of Tennessee, is to prevent an insurance

company from denying responsibility for the representations and actions of an agent from whom applications are voluntarily accepted, and to protect an applicant who relies on such representations or actions. In Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168 (1924), the Supreme Court of Tennessee stated with regard to T.C.A. § 56–705:

It is apparent that the Legislature purposed affording to the insured a responsible connection with the insuring company, with which he was dealing, often times a nonresident corporate entity of uncertain address, with its identity, for purposes of legal notice, more or less obscure. 150 Tenn. at 695, 266 S.W. at 768.

The Court also quoted with approval from Pollock v. German Fire-Insurance Co., 127 Mich. 460, 86 N.W. 1017 (1901), an excerpt from Schomer v. Hekla Fire Insurance Co., 50 Wis. 575, 7 N.W. 544 (1880):

The obvious intention of the Legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority. 150 Tenn. at 700, 266 S.W. at 769.

T.C.A. § 56–705 has been construed liberally in favor of the insured in order to effect its remedial purpose. Industrial Life & Health Ins. Co. v. Trinkle, 30 Tenn.App. 243, 204 S.W.2d 827 (1947). However, we are unaware of any case construing it to permit an applicant to disavow instructions given to an agent to correct information which the applicant supplied pursuant to the require-

---

7. Mr. Schaedle's letter, set forth as "Trial Exhibit No. 6" in appellants' appendix at 141a, provides in part:

Dear Mrs. Roseman:
 We haven't received a report of values since December for the fire insurance.

I must caution you that, in the event of a loss, there could be a severe penalty for failure to report. We also definitely need a separation of reports between Ridgely and Hickman.

ments of a policy, *where the agent faithfully and accurately carried out those instructions.*[8]

■ The second question presented on appeal requires us to determine whether appellant is entitled to reformation or rescission of the value reports which it submitted. Reformation contemplates the rewriting of a contract to reflect the actual intent of *both* parties at the time of contracting. *See* Henderson v. Henderson, 158 Tenn. 452, 14 S.W.2d 714 (1929), *reh. denied,* 159 Tenn. 126, 17 S.W.2d 15 (1929). Consequently, as appellant points out, a contract of insurance may be reformed even though a loss has already occurred. Phillips v. North River Ins. Co., 14 Tenn. App. 356 (1931). We determine, however, that appellant is not entitled to reformation of its reports. The District Court found that the inaccuracy of the figures contained in the reports was caused solely by appellant's own internal mistakes and this finding is supported by the record. Under the law of Tennessee, unless a claim for reformation is based upon mutual (rather than unilateral) mistake, or is induced by fraud on the part of one party, relief is unavailable. Barker v. Harlan, 71 Tenn. 505 (1879); Pittsburg Lumber Co. v. Shell, 136 Tenn. 466, 189 S.W. 879 (1916). Our decision is consistent with Silver Fox Co., Inc. v. New York Indemnity Co., 125 Misc. 430, 210 N.Y.S. 18 (Supreme Ct. 1925), in which reformation was denied under facts almost identical to those of the instant case. It concerned a reporting policy which insured goods against burglary and under which the insured erroneously reported the value of goods at a particular location as $1,100 when, in fact, the value was $11,000. See also, Lawson v. Twin City Fire Ins. Co., 2 F.Supp. 171 (1932).

■ It is also clear that appellant is not entitled to rescission of the erroneous value reports. Under the law of Tennessee, rescission is generally not available if the parties cannot be placed in *statu quo.* Baird v. McDaniel Printing Co., Inc., 25 Tenn.App. 144, 153 S.W. 2d 135 (1941); Lindsey-Davis Company, Inc. v. Siskin, 210 Tenn. 339, 358 S.W.2d 331 (1962). Cf. Delta Investing Corporation v. Moore, 366 F.2d 516 (6th Cir. 1966). In the instant case, after the erroneous value reports were filed, appellees' potential liability under the policies became an actual liability because of the fire at the Ridgely factory. Rescission of the reports would not release them from this liability but instead would increase it.[9] As discussed above, an insured who had purchased a fixed amount of insurance could not, after his property had been destroyed, successfully seek through reformation the enlargement of his policy's limited coverage on the ground that he had intended to obtain full insurance coverage, but had failed to do so because of a clerical error made by one of his employees in determining the value of his property. See Silver Fox Co., Inc. v. New York Indemnity Co., supra. Yet appellant, although technically arguing for rescission of value reports, seeks just such relief under circumstances which would offend this principle. As the District Court stated in its first opinion:

> The facts before this Court do not involve inequitable conduct, nor is status quo restoration available. Plaintiff wishes to burden defendants with plaintiff's own inadvertence and mistake. Rescission is not available in such a case.

Appellant relies on Kutsche v. Ford, 222 Mich. 442, 192 N.W. 714 (1923), and M. F. Kemper Const. Co. v. City of Los Angeles, 37 Cal.2d 696, 235 P.2d 7 (1951). Both cases involved accepted bids for construction projects which, because of the offeror's clerical error, were

---

8. In light of our decision on this point, we need not consider whether Schaedle had actual or apparent authority to waive the requirement of the policies that the value reports be in writing. The District Court made no finding as to this question.

9. See note 6, supra.

lower than he had intended. Although rescission of the bids was granted, in both cases the effect was to place the parties *in statu quo*. In *Kutsche* the court stated:

It does not appear that plaintiff's mistake has made the school building cost more than it otherwise would have cost. The school district, if placed back where it was before the bid, loses nothing except what it seeks to gain out of plaintiff's mistake. To compel plaintiff to forfeit his deposit, because of his mistake, would permit the school district to lessen the proper cost of the school building at the expense of plaintiff, and that, in equity, is not reason at all for refusing plaintiff relief. 222 Mich. at 450, 192 N.W. at 717.

In neither of these cases, nor in any case of which we are aware, has rescission been granted because of the unilateral mistake of one party where it would not operate to restore the positions of both parties before the mistake occurred.

The other cases relied upon by appellant are inapposite. Michigan Millers Mut. Fire Ins. Co. v. Grange Oil Co., 175 F.2d 540, 10 A.L.R.2d 209 (9th Cir. 1949), was clearly decided on the basis of the court's construction of particular policy provisions not present in the instant case. Columbia Fire Ins. Co. v. Boykin & Tayloe, Inc., 185 F.2d 771 (4th Cir. 1950), involved a monthly reporting insurance policy similar to the one before us on this appeal. In that case, however, the court merely held that the insurer had waived, and was estopped from relying on, the policy's requirement of timely filing of monthly value reports because of its actions over a period of several years. Appellant

does not make, nor would the record support, such a contention in the instant case.

The third question presented on appeal is whether the word "loss", as used in Paragraph 12,[10] should be construed to mean the total value of all goods which were in any way damaged by the fire, as appellant contends, instead of the value of such goods less their salvage value. Such an unnatural and strained construction of this word would clearly defeat the purpose of Paragraph 12, *supra*, and is inconsistent with the meaning of the term as generally understood.

The true value of a loss to the insured's wholesale stock of goods and merchandise under a fire policy must be determined by deducting from the value of the property involved in the fire the value of what was left undamaged or partially damaged. 15 COUCH, INSURANCE 474 § 54:260 (2d ed. 1960).

Under the law of Tennessee, the terms used in a contract are to be given their natural, popular meaning unless from the context it appears that the parties intended otherwise. Davis v. Smith, 28 Tenn. 557 (1848); Moore v. Life & Casualty Ins. Co., 162 Tenn. 682, 40 S.W.2d 403 (1931). We therefore construe the term "loss", as used in Paragraph 12, to mean the value of the damaged goods before the fire less their salvage value.

We find that appellant's final contention that appellees, after the conclusion of the trial before the District Court, changed the grounds on which their denial of full coverage of the loss was based is without merit. Neither the answers of appellees [11] nor the letter

10. See note 4, supra.

11. Paragraph VI of the answer of Equitable Fire & Marine Insurance Co., set forth in appellant's appendix at 31a, states in part:

Defendant admits that plaintiff did not file with it the physical reports, copies of which are attached to the Complaint, marked Exhibits "3", "4" and "5", but these reports were submitted to the defendant by its Agent,

sent by the general adjustor [12], which are relied on by appellant, furnish support for this contention.

The decision of the District Court is affirmed.

Union City Insurance Agency [of which Schaedle is a partner], based on information reported to said Agent by the plaintiff.

Paragraph VI of the answer of the other three appellees is set forth in appellant's appendix at 39a and is identical to that quoted immediately above.

12. The letter of the general adjustor is set forth in appellant's appendix at 26a and states in part:

The last reported values at risk at the Ridgely Plant prior to fire of 30 March 1965 was $309,000.00 as of 28 February 1965, reported to your Agents, Union City Insurance Agency, on or about 20 March 1965.