[No. 32870.   Department One.   December 30, 1954.]

PUGET SOUND PAINTERS, INC., *et al.*, *Appellants*, v. THE STATE
OF WASHINGTON *et al.*, *Respondents.*[1]

*Ferguson & Burdell* and *Donald McL. Davidson,* for appellants.

*The Attorney General, Don Miles* and *G. Newell Smith, Assistants,* for respondents.

FINLEY, J.—This is an action to enjoin the forfeiture of a bid bond.

Puget Sound Painters, Inc., submitted a bid in the amount of $45,354 to the state highway commission relative to cleaning and painting the main towers of the Tacoma Narrows Bridge. The bid was accompanied by a bid bond executed by the United Pacific Insurance Company in the sum of five per cent of the bid. Puget's and other bids on the project were opened on the morning of August 18th, when it was

[1] Reported in 278 P. (2d) 302.

orally announced that Puget was the low bidder. Thereupon, Puget discovered a significant disparity between its bid and the next lowest one, checked its computations, and promptly advised Mr. Stevens, the bridge engineer of the highway department, that a mistake had been made in the amount of its bid. Mr. Stevens stated that nothing could be done about the matter. The next day the contract was formally awarded to Puget.

Apparently, Mr. Cole, who was one of the two principal owners of Puget and an experienced contractor, took measurements of the cross-bracing of the bridge towers. Mr. Lieb, who was an experienced contractor and the other principal owner of Puget, took measurements of one of the four legs (so called) of each of the two bridge towers. He prepared a memorandum of his measurements. Therein, under the caption "IS [inside] towers, one side," Mr. Lieb noted certain measurements, and under the caption "OS [outside] towers, one side," he noted certain other measurements. Mr. Lieb gave the memorandum to Mr. Cole, and then left town to work on another of the firm's jobs. Mr. Cole took his own calculations and Mr. Lieb's memorandum, and from these figured Puget's bid for submission to the highway department. In doing so, he misunderstood certain notations in Mr. Lieb's memorandum. He thought the area indicated by Mr. Lieb's measurements under the aforementioned captions covered one entire side of one of the bridge towers—that is, he thought that the measurements covered two rather than just one leg of the towers. He simply multiplied by *two* rather than by *four*, in computing the area of the four legs of each tower. The final result of his compilations was that Puget's bid was in error in failing to include the cost of cleaning and painting one half of each bridge tower.

The state highway department refused to release Puget from its bid bond. This action was instituted by Puget, seeking to prevent forfeiture of its bid bond. The trial court entered a finding to the effect that Puget's mistake showed manifest carelessness and constituted *willful neglect*. Judg-

ment was entered, forfeiting the bid bond, and against Puget in the sum of $2,267.70. Puget has appealed.

Among other things, error is assigned to the aforementioned finding of the trial court, to the entry of judgment against Puget, and to the denial of motions for reconsideration of the court's oral decision and for a new trial. Further error is assigned to the refusal of the court to require the state highway department to produce its own estimate of the cost of the work, the refusal of the trial court to permit the amount of such estimate to be shown, and to the refusal of the trial court to hear evidence relative to the highway department's knowledge that a mistake had been made. We think there is merit in all of these assignments of error.

Puget relies upon *Donaldson v. Abraham*, 68 Wash. 208, 122 Pac. 1003, and upon *Kutsche v. Ford*, 222 Mich. 442, 192 N. W. 714; *Board of School Com'rs v. Bender*, 36 Ind. App. 164, 72 N. E. 154; *Bromagin v. City of Bloomington*, 234 Ill. 114, 84 N. E. 700; *St. Nicholas Church v. Kropp*, 135 Minn. 115, 160 N. W. 500; *O'Connell, Inc. v. County of Broome*, 198 Misc. 402, 98 N. Y. S. (2d) 1009; *Kemp v. United States*, 38 F. Supp. 568 (1941); and *Shepard v. United States*, 95 Ct. Cl. 407 (1942).

In the *Donaldson* case, *supra*, the commissioners for King county, Washington, advertised for bids for the construction of a county road. Donaldson submitted a bid. It was accepted by the county commissioners, and a formal contract was tendered to the bidder. Donaldson refused to perform and sought equitable relief from the forfeiture of the bid bond because of a mistake in the compilation of the bid. An item of $3,500, excavating cost, had been overlooked and was not included in the bid. The opinion of this court stated that the mistake in the bid was not the result of willful neglect, and held that Donaldson was entitled to equitable relief from forfeiture of the bid bond. From the opinion in the *Donaldson* case, there is a strong inference, but it is not crystal clear, that notice of the mistake in the bid was given to the county commissioners after they had awarded the contract. Apparently, the court was satisfied that whether

the notice was given before or after the award was not too significant in view of the fact that the bidder had acted with reasonable promptness in giving notice of the mistake, and this before the other party's status had deteriorated substantially. The facts relative to Donaldson's negligence in the preparation of his bid are not substantially different from the facts relative to Puget's negligence in the preparation of its bid. If the former did not amount to willful neglect, it is difficult for us to see how the latter could.

In this connection, we might observe that the phrase, "willful neglect," as used in the *Donaldson* case, is somewhat troublesome. It frequently is employed in relation to tortious or criminal acts. Its use in relation to the matters of contract and equity involved in the *Donaldson* case is somewhat novel. Willful means "knowingly"; thus, willful neglect suggests intentional, conscious, or known negligence —a *knowing* or *intentional* mistake. However, at one point the opinion in *Donaldson* refers to bad faith, and, in using the phrase, "willful neglect," the underlying thought of the court may have related to the factor of *bad faith*; that is, whether the bidder deliberately made a mistake, thinking that the contract might be awarded to him and that he might then want to reconsider the desirability of the contract, possibly seeking an "out" on the ground of the mistake in his bid. In any other sense, the phrase, "willful neglect," seems somewhat inapt.

From our examination of other bid bond forfeiture cases, we find that several courts do not use the phrase, "willful neglect." They refer to gross neglect or negligence. This terminology seems somewhat more fitting. In addition to the factors of bad faith, and negligence pertaining to the compilation and submission of a bid, other factors are considered and weighed by the courts in granting or withholding equitable relief. Some of these are: (a) whether the bidder was reasonably prompt in giving notice of a mistake in his bid; (b) whether the bidder will suffer substantial loss if not relieved from forfeiture; (c) whether the other

party to the bid has suffered a change of status, involving substantial loss, damages, or detriment.

In the instant case, there was no evidence of bad faith on the part of Puget. Consequently, its conduct did not amount to *willful neglect*, as we think that term was used by the court in the *Donaldson* case. Furthermore, Puget's conduct did not amount to gross negligence, as the latter term has been applied in bid bond forfeiture cases from other jurisdictions. Puget acted with reasonable promptness in giving notice of the error in the bid; in fact, the evidence shows the highway department was advised of the mistake in Puget's bid on August 18th. This was the day before the department formally acted to award the contract to Puget. If its bid bond is forfeited, Puget will lose at least $2,267.70. This is a substantial amount. The trial court, in its finding No. XV, indicated that the damages to the highway department were indefinite and uncertain.

Under the caption, "Findings of Fact," the trial court stated, as mentioned hereinbefore, that Puget was chargeable with willful neglect. A convincing argument may be made that this was not a finding of fact but a conclusion of law. If regarded as a finding of fact, the evidence in the record, viewed in the light of the *Donaldson* case, clearly preponderates against it; if regarded as a conclusion of law, it is not (considering *Donaldson*) supported by other findings of the trial court or evidence in the record.

We are convinced that the opinion in the *Donaldson* case establishes the principle or policy in this jurisdiction: that equity will relieve against forfeiture of a bid bond, (a) if the bidder acted in good faith, and (b) without gross negligence, (c) if he was reasonably prompt in giving notice of the error in the bid to the other party, (d) if the bidder will suffer substantial detriment by forfeiture, and (e) if the other party's status has not greatly changed, and relief from forfeiture will work no substantial hardship on him. The basic purpose of bid bonds is to afford protection against a change of status involving substantial damages, loss, or detriment by a party soliciting bids. In the instant case, it

does not clearly appear that the highway department has suffered substantial detriment. We see no justification for allowing a windfall to the department.

The judgment of the trial court withholding the requested equitable relief should be reversed. It is so ordered.

GRADY, C. J., MALLERY, HAMLEY, and OLSON, JJ., concur.

---

February 11, 1955. Petition for rehearing denied.