**339 P.2d 421**

STATE of Utah, By and Through its ROAD COMMISSION, C. H. Vance, Chairman, Layton Maxfield and Lorenzo J. Bott, Members of the State Road Commission, Plaintiff and Appellant,

v.

UNION CONSTRUCTION COMPANY, Inc., and the United States Fidelity and Guaranty Company, a corporation, Defendants and Respondents.

No. 8816.

Supreme Court of Utah.

May 19, 1959.

E. R. Callister, Jr., Atty. Gen., Maurice D. Jones, Asst. Atty. Gen., for appellant.

Dwight L. King, Robert W. Hughes, Salt Lake City, for respondents.

McDONOUGH, Justice.

Appeal from a judgment relieving defendant and its bondsman from a road construction bid. Defendant had submitted the low bid of $173,000 for construction of five miles of bituminous surfaced road between Escalante and Henrieville in Garfield County, together with the required good faith deposit of 5% to guarantee performance. The bid was accepted, but the defendant learned that it had made an error in the exact route of the roadway, and refused to perform. Upon suit for forfeiture of the performance guarantee deposit, the trial court refused to enforce the forfeiture.

The sole question in the case is whether under the facts the trial court was justified in refusing to enforce the forfeiture.

■ The case of Puget Sound Painters, Inc. v. State of Washington, 45 Wash.2d 819, 278 P.2d 302, 304, in our opinion, correctly sets forth the criteria for determining whether a bond, such as involved in this case, should be forfeited. It is therein stated:

"* * * that equity will relieve against forfeiture of a bid bond, (a) if the bidder acted in good faith, and (b) without gross negligence, (c) if he was reasonably prompt in giving notice of the error in the bid to the other party, (d) if the bidder will suffer substantial detriment by forfeiture, and (e) if the other party's status has not greatly changed, and relief from forfeiture will work no substantial hardship on him, * * *". (See supporting cases in annotation in 52 A.L.R.2d commencing at p. 792.)

No contention is made by the plaintiff that the evidence below does not clearly reveal that conditions (a), (c), (d) and (e) were satisfied. True, plaintiff does suggest that the plaintiff would suffer deteriment because it was required to accept the higher bid because the defendant refused to enter into a contract for the amount stipulated in its bid. This contention is succinctly answered by the Supreme Court of Michigan in the case of Kutsche v. Ford, 222 Mich. 442, 192 N.W. 714, 717;

"It does not appear that plaintiff's mistake has made the school building cost more than it otherwise would have cost. The school district, if placed back where it was before the bid, loses nothing except what it seeks to gain out of plaintiff's mistake. To compel plaintiff to forfeit his deposit, because of his mistake would permit the school district to lessen the proper cost of the school building at the expense of the

plaintiff, and that, in equity, is no reason at all for refusing plaintiff relief."

Defendant's president, Heber W. Glenn, is a construction man of many years' experience. He went to the site of the proposed project to inspect it. His testimony, accepted by the trial court, was that he was misled as to the route of the road by some old stakes placed there previously by agents of the Road Commission, and particularly by a red flag placed on the banks of a wash (gully) which one of the State's engineers admitted should have been pulled. Relying on such stakes, Mr. Glenn located the roadway as going through an area of loose soil and so figured the necessary excavation at about $30,000; whereas as it was actually surveyed and planned to be constructed, it involved the removal of a great deal of rock which item would require expending about $59,000, according to the next lowest bid. It is defendant's claim that its bid was obviously about $29,000 less than it should have been.

 The trial court found that the defendant acted "reasonably and without negligence" which finding is not so wholly unreasonable under the evidence as to require us to reject it. Such finding of course includes a fortiori the fact that he acted without "gross negligence" to meet requirement (b) of the test set forth in the Puget Sound Painters case, supra. The further fact is that the defendant went to the site and discovered the error within two days after the bids were opened. On that day orally and the next day by letter— Mr. Glenn notified the plaintiff of the mistake and of his inability to perform. The court found that the plaintiff suffered no disadvantage such as having to readvertise for bids, or go to any other trouble or expense except being required to take the next lowest bid. Under the equitable powers of the court it does not appear to us that the court abused its discretion in refusing to enrich the plaintiff at the expense of the defendant by invoking the forfeiture.

Affirmed. Costs to defendant (respondent).

CROCKETT, C. J., and WADE, J., concur.

WORTHEN, J., heard argument but died before opinion was filed.

HENRIOD, Justice (dissenting).

I dissent, respectfully suggesting that the cases cited by the main opinion are so factually different as not to be any authority here, both involving mathematical errors in calculation, and not carelessness in estimating a vital construction item as is the case here. The same is true generally of the cases cited in the A.L.R. annotation. Furthermore, in my opinion, the Puget Sound case flies in the teeth of our own pronouncements made with respect to cases of unilateral mistake, and it is difficult for me to

see how the main opinion can be squared with our decision in Ashworth v. Charlesworth.[1]

In the Ashworth case, where painting contractors reneged on a bid to paint a bridge, on the ground their bid was based on a mistake, we had this to say:

"Defendants have cited several cases in which relief has been allowed because of an unilateral mistake. *However, such relief has only been granted when the moving party has used ordinary diligence to prevent a mistake.*"

We went on to adopt a different rule than that espoused in the Puget Sound case and now approved in this case, when we quoted with approval the following rule:

"Equitable relief from a mutual mistake is frequently given by a reformation of the contract. But a contract will not be reformed for an unilateral mistake. Equitable relief may however, be given from an unilateral mistake by a rescission of the contract. Essential conditions to such relief are: (1) The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable. (2) The matter as to which the mistake was made must relate to a material feature of the contract. (3) Generally *the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake * * *.*"

We also quoted approvingly from Williston on Contracts, Sec. 1577, p. 4407 as follows:

"Where the signer of a writing has made an innocent mistake as to the nature of his act without carelessness, whether induced by fraud or not, the writing is not his expression, and there is no contract. *But if a man acts negligently, and in such a way as to justify others in supposing that the terms of the writing are assented to by him and the writing is accepted on that supposition, he will be bound both in law and in equity * * *.*"

We further pointed out that:

"It was just as reasonable for plaintiffs to conclude that the high bidder was in error as to assume that the low bidder had made a mistake. The mere fact that two bids are at great variance does not compel a holding that the acceptor knows error has crept in and that he must notify the lowest bidder of the possibilities of a mistake. To hold otherwise would make one contracting party anticipate and guard against the negligence of the other."

Defendant and *seven* other bidders sought a road construction contract, in which 5%

---

1. 1951, 119 Utah 650, 231 P.2d 724, 727.

of the bid was required to be deposited as good faith money. In the defendant's proposal, *it was agreed* that the 5% would be forfeited as liquidated damages if, being the successful bidder, defendant failed to carry out the contract. Defendant underbid the next lowest bidder among the other seven by $29,000 on an item calling for 135,000 cubic yards of "unclassified roadway excavation." The president of defendant company had visited the project unaccompanied by any state representative, before presenting his bid, but when he was advised that his company was the successful bidder and noticed the disparity between his bid and the others, he again visited the site of the project with a state engineer, and decided he had made a mistake in the bid with respect to the road excavation. He advised the Road Commission that he had made an error and asked to be relieved of his bid. He was not only met with a refusal but with this litigation.

Defendant's agent had been in the road construction business for 35 years. He admitted familiarity with the following Road Commission Regulation:

"1–2.5: The bidder is required to examine carefully the site of the proposed work, proposal, plans, specification, special provisions, and contract form before submitting a proposal. It is mutually agreed that submission of a bid shall be considered prima facie evidence that the bidder has made such examination and is satisfied as to the conditions to be encountered in performing the work and as to the requirements of the plans, specifications, supplemental specifications, special provisions and contract, * * * "

Nonetheless, he admitted that he did not examine the specifications before going unaccompanied by any state agent to the site,—and he failed in all this when the very bid he signed commenced with the language "The undersigned after having personally and carefully examined the specifications, plans and form of contract and bond * * proposes to" construct the road specified in the proposal.

He said he saw some stakes, including some that were new and some that were old, weathered and unmarked. He said he thought the road was to go through farmland free from rock. None of the other seven bidders made any such careless mistake or came to any such loose conclusion.

Furthermore, the contractor here was charged with knowledge of Title 14–1–1.1 Utah Code Annotated 1953, Pocket Supplement, which reads:

"Any * * * corporation * * * bidding to do work or furnish materials and supplies for the state * * * may * * * be required to furnish * * * with said bid * * * an amount specified in the notice * * * calling for such bid * * * The state * * * upon refusal by the contractor to enter

into a contract and to furnish a payment and performance bond after having been notified that said contract is the lowest responsible bidder *will then require said contractor to forfeit * * the amount of the security as liquidated damages for the contractor's failure to produce a performance or payment bond and to enter into the contract as anticipated by the advertisement for bid."*

Where an experienced contractor bidding on a public road contract assigns a figure for the accomplishment of "unclassified road excavation," it seems only reasonable that he should use the highest care in determining the situs and composition of the material, it being obvious that the phrase could include mud, dirt, sand, solid granite or some other material. It further strikes this writer that failure to look at the plans and specifications to determine place of performance and estimated cost of such an undertaking, or failure accurately to determine the terrain and texture of the material to be moved in some other way than to go to a project without consulting any state representatives, relying on a series of stakes, some of which are old and some new, to estimate what removal of the material will cost, hardly can be classified as using ordinary case, but must be tagged at least as carelessness and in my opinion, gross negligence. A contractor bidding on such an item, hardly could be expected to excuse himself on the basis of a unilateral mistake, on the ground that he did not examine the plans and specifications, or that he was misled by stakes, some old and some new, or that he neglected to have a state representative point out the area called for in the plans and specifications, in arriving at his estimate of cost incident to a project of the magnitude encountered here. The fact that seven other bidders were not misled or mistaken by the stakes tends to establish the fact that defendant did not use ordinary or any other kind of care in making the bid. If the state must disgorge the good faith money deposited to guarantee performance of a contract every time a contractor underestimates the cost of performing the whole or any part of the contract, and such underestimating is the result of failure to examine the plans or failure to consult with the engineers having supervision and knowledge of the project, or blindly relying on stakes that might or might not accurately define the work with which he is charged under the plans and specifications, the necessity for depositing money to guarantee performance is quite purposeless.

As pointed out supra, it is more or less elementary that a unilateral mistake of fact is no ground for escape from a written commitment. There is an exception where the party against whom relief is sought knows of the mistake,[2] equity taking the position

2. Willison, Rev.Ed. Vol. V, Sec. 1573, p. 4399.

that it would be unconscionable for him to assert a defense where, had he done equity, he would have divulged such knowledge. Another exception is found where the person charged with the mistake is a donee or volunteer.[3] It is conceivable that there might be other instances where relief might be justified, but it is difficult to see, from this record, how the defendant's conduct here could qualify for relief in any such case.

Defendant leans heavily on the so-called "nearsighted engineer" case [4] in support of his contention that he should be relieved of the forfeiture to which, in writing, he subscribed. That case represents a mistake born of poor eyesight, where the engineer simply mistook the figure "7" for the figure "5," listing the price for excavation at 50¢ per cubic yard instead of 70¢. In that case the clerk of the board having to do with the construction "expressed the thought that 50 cents per cubic yard for earth excavation was too low, and there was some discussion about it at the time," so that the case well might fall within the exception on the ground the board knew of the mistake. Kutsche v. Ford, 222 Mich. 442, 192 N.W. 714, cited by defendant and in the main opinion was a case involving a mistake in calculation, (as was Puget Sound Painters, Inc., v. State of Washington, also cited)

and not an error in estimate as to the important matter of the quantum and quality of material to be removed. An error in arithmetic well might result without any carelessness at all, but factually it could not support relief in a case where, as here, one asks relief because quite carelessly, and without inquiry, it appears, he assumed something other than that which easily could have been made certain had he studied the plans or had he consulted a state representative having to do with the project before making his bid.

It would seem that requirement that a 5% bond be posted to guarantee the faithful performance of a contract, if awarded, is not an unreasonable requirement, and is designed to meet the very eventuality that developed here, and that the very purpose of requiring the forfeitable 5% is to safeguard against such eventuality, which in this case cannot be ascribed to anything but carelessness on the part of one who now asks equity to relieve him of a bargain of his own making.

I am of the opinion that the findings of fact to the effect that defendant's representative acted reasonably and without negligence are not supported by the evidence, and there appears to be no legitimate reason why defendant should be relieved of his obligation.

3. Id.
4. Moffett, Hodgkins & Clarke Co. v. City of Rochester, 1900. 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108; contra, Daddario v. Milford, 296 Mass. 92, 5 N.E.2d 23, 107 A.L.R. 1447.