[No. 496-2.   Division Two.   May 26, 1972.]

J. J. WELCOME & SONS CONSTRUCTION COMPANY, *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*

*Jerry W. Spoonemore* and *George W. Akers* (of *Montgomery, Purdue, Blankenship & Austin*), for appellant.

*Slade Gorton, Attorney General,* and *William G. Boland, Assistant,* for respondent.

*Herman S. Siqueland* (of *Lee, Carney, Smart & Bever*), amicus curiae.

PETRIE, C.J.—The trial court denied the request of appellant-contractor to reform a highway construction contract. We agree with the trial court that the contract should not be reformed. All the facts before us are contained in an agreed statement of facts.

The appellant, J. J. Welcome & Sons Construction Company, is engaged in highway construction work, and in

response to an advertisement for bids, submitted a proposal for construction of SR 90, "Tanner to Lower Crossing" to the Washington State Highway Commission, Department of Highways. The several bids submitted on this project were scheduled to be opened by the Department of Highways at 10 a.m. on Wednesday, September 30, 1970, at the Highway Department office in Olympia. At approximately 9 a.m. on Wednesday, September 30, 1970, an employee of the appellant telephoned the Olympia office of Western Union Telegraph Company, upon instructions from one of the owners of the appellant, and requested that a message be sent immediately to the Department of Highways, changing the dollar amount of item one on the bid proposal previously submitted by the appellant from $210,000 to $295,000.[1] The message was read back for confirmation by the Western Union employee and correctly read as follows: "Change item number one mobilization from $210,000.00 to $295,000.00 on bid to be opened at 10:00 A.M. this morning, SR 90, Tanner to Lower Crossing."

The correct message was thereupon transmitted by the Olympia office of Western Union to the reperforation center in Portland, Oregon at approximately 9:10 a.m., and immediately came back from the reperforation center correctly. In transferring the message from the receiver to the page printer, which communicates directly with the Highway Department office by means of a tie-line, the Western Union employee made a typographical error in the dollar amount, and the message received by the Highway Department contained the figure of "$285,000.00" for item one, rather than "$295,000.00," as intended. At approximately 9:13 a.m. the Highway Department confirmed that the message had been received; no confirmation of the contents of the message was requested or given.

At the bid opening at 10 a.m., the appellant was determined to be the low bidder for the job, with a total bid of $6,560,049.65, which total included the $285,000 figure for

---

[1] We are not advised of the reason for the change.

item number one. The second low bid received by the Highway Department on this project was $6,805,583.71. Shortly after the bid opening, the appellant learned that it was the apparent successful low bidder on the project, and in connection with this knowledge also learned that the bid had come in on item number one for $285,000, rather than $295,000. The appellant immediately notified the State Highway Department of this discrepancy and discovered that the error had occurred in the offices of Western Union. On October 7, 1970, Western Union sent a duplicate corrected copy of the message, with the amount properly shown as $295,000, to the Washington State Highway Department in Olympia.

The contract was awarded to the appellant on October 1, 1970, as the lowest responsible bidder on the project. Although Washington State Highway Commission, Department of Highways Standard Specification No. 1-03.3 requires that the successful bidder sign and return the contract forms within 20 calendar days after the date of award, the appellant requested and was granted a 20-day extension of this time by the department, pursuant to standard specification No. 1-03.5. This 20-day extension for the appellant to sign and return the contract did not, however, extend the required completion date of the project, pursuant to the terms of standard specification No. 1-08.5. The purpose of the extension was to provide the appellant with additional time in which to seek reformation of the price term of the contract by suit filed in Thurston County Superior Court.

The suit for reformation of the contract was filed and the court heard arguments on the appellant's motion for summary judgment on November 2, 1970. This motion was denied and the formal order denying the motion was entered on November 16, 1970. In the meantime, the appellant had signed the contract on October 27, 1970, and was withholding it for delivery to the State Highway Department until after the court had ruled on the appellant's motion for summary judgment. Upon the court's denial of the motion

for summary judgment, the appellant transmitted the signed contract documents to the State Highway Department, where they were duly executed on November 10, 1970. The appellant thereupon noted the matter for trial in Thurston County Superior Court, and the state moved for summary judgment of dismissal of the appellant's cause of action. The hearing on the state's motion took place on December 28, 1970, and resulted in the granting of the motion and the entry of an order dismissing the appellant's action with prejudice. This appeal followed.

The appellant notes, preliminarily, that under appropriate circumstances equity will relieve against forfeiture of a bid bond. *Puget Sound Painters, Inc. v. State*, 45 Wn.2d 819, 278 P.2d 302 (1954). It contends that under appropriate circumstances equity should also permit reformation of a highway construction contract, and that the agreed facts constitute such appropriate circumstances. We cannot agree.

Reformation is an equitable remedy which permits the court to correct errors and thereby make an instrument truly express the real intention of the parties thereto. *Keierleber v. Botting*, 77 Wn.2d 711, 466 P.2d 141 (1970). In order to entitle a party to a contract to a reformation thereof, based upon mistake of fact, there must have been either a mutual mistake of the parties, or a mistake on the part of the one entrusted with reducing the contract to writing (sometimes classed as a mutual mistake), or a mistake on the part of one party and fraud or inequitable conduct on the part of the other party. *Dennis v. Southworth*, 2 Wn. App. 115, 467 P.2d 330 (1970); *Kaufmann v. Woodard*, 24 Wn.2d 264, 163 P.2d 606 (1945).

In the instant case, appellant's bid—as it existed at the time set for opening bids—constituted an offer to contract. *Mottner v. Mercer Island*, 75 Wn.2d 575, 452 P.2d 750 (1969). There is no contract until the offer is accepted. *A.A.B. Elec., Inc. v. Stevenson Pub. School Dist. 303*, 5 Wn. App. 887, 491 P.2d 684 (1971). When the contract was awarded to the appellant on October 1, 1970, mutual con-

tractual responsibilities commenced, even though it was contemplated that contract forms would subsequently be executed. The Highway Commission had no authority to accept any offer other than that which was embodied in the sealed bid, as amended up to the time set for opening of the bids. RCW 47.28.080 and .090.[2]

Notwithstanding these limitations, the appellant contends that acceptance of its subsequently revised bid should be ordered by the court because no other bidder will be injured and the state will not be injured. The thrust of appellant's contentions is that it could have rescinded the contract without forfeiture of its bid bond (*Puget Sound Painters, Inc. v. State, supra*) and the state would then be required to accept the next lowest bid, which was approxi-

---

[2]RCW 47.28.080 provides: "Any person, firm, or corporation proposing a bid for the construction or improvement of any state highway in response to a call for bids published therefor may withdraw such bid proposal without forfeiture and without prejudice to the right of such bidder to file a new bid proposal before the time fixed for the opening of such bid proposals: *Provided,* That the request for such withdrawal shall have been made in writing, signed by the person proposing such bid or his duly authorized agent, and filed with the highway commission before the time fixed for the opening of such bid proposals. No bid proposal shall be considered which has not been filed with the highway commission before the time fixed for the opening of bid proposals. In any provisions regarding the filing or withdrawing of bid proposals the time fixed for the opening of bid proposals in the call for bid proposals as published shall control without regard for the time when such bid proposals are actually opened."

For the period of time pertinent to this appeal, RCW 47.28.090 provided: "At the time and place named in the call for bids the Washington state highway commission shall publicly open and read the final figure in each of the bid proposals properly filed and read only the bid items on the three lowest bids, and shall award the contract to the lowest responsible bidder unless the commission has, for good cause, continued the date of opening bids to a day certain, or rejected said bid: *Provided,* That any bid may be rejected if the bidder has previously defaulted in the performance of and failed to complete a written public contract, or has been convicted of a crime arising from a previous public contract. All bids shall be under sealed cover and accompanied by deposit in cash, certified check, cashier's check, or surety bond in an amount equal to five percent of the amount of the bid and no bid shall be considered unless the deposit is enclosed therewith."

mately one-quarter million dollars higher. Disregarding the alternative that the state might also, under those circumstances, reject all bids and issue a new call, and disregarding further the fact that the legislature has foreclosed acceptance of any post-opening revision of a bid on a highway contract, the simple answer to appellant's contention is that granting reformatory relief in this instance would open the door in a sensitive area to factual review of bid-letting procedures which would adversely invade the safeguards surrounding the competitive bidding system and the confidence which contractors and the public have in its fairness. A reasonably efficacious competitive bidding system contemplates a fair forum for contractors desiring to undertake public projects and, through such a forum, protection for the public that such work will be let to responsible bidders at the best available price. *A.A.B. Elec., Inc v. Stevenson Pub. School Dist. 303, supra.*

Judgment affirmed.

Pearson and Armstrong, JJ., concur.