[No. 1518-1.    Division One—Panel 1.    April 2, 1973.]

RED-SAMM MINING COMPANY, INC., *et al., Respondents,* v. THE PORT OF SEATTLE, *Appellant.*

*Bogle, Gates, Dobrin, Wakefield & Long, Don Paul Badgley,* and *Richard M. Clinton,* for appellant.

*Barokas, Martin & Richey, Dale R. Martin,* and *Larry A. Barokas,* for respondents.

JAMES, J.—Red-Samm Mining Company, Inc. and General Construction Company, joint venturers (hereinafter Red-Samm), brought this action against the Port of Seattle seeking reformation of a contract by which Red-Samm agreed "to furnish all labor, material, and supplies, and to construct" the port's "L.D.I.D.D. Terminal 115—Development Unit No. 2, Yard Improvements and Utilities" for the sum of $2,535,062.56.

The parties entered into a stipulation as to agreed facts. Red-Samm moved for a summary judgment decreeing that the contract be reformed to increase the contract price by $96,650.34. The port moved for a summary judgment of dismissal. The trial judge ruled that Red-Samm's motion should be granted and entered judgment "reforming the amount of that certain contract between the parties . . . from $2,535,062.56 to read '$2,631,712.90, effective as of the date of contract award.' " We do not agree.

The formal "Order Upon Motions For Summary Judgment" recites that the trial judge considered (1) the stipulation as to agreed facts, (2) each party's memorandum of authorities, and (3) a news article "respecting the Red-Samm bid." The order also includes the following:

## II. FINDINGS

The court having considered the evidence and argument of counsel, finds:

2.1 *No Issue*: There is no genuine issue as to any material fact in this action.

2.2 *Judgment*: Plaintiff is entitled to summary judgment in accordance with the prayer of its complaint as a matter of law. Defendant's motion for summary judgment should be denied.

The facts which we consider to be controlling are as follows: The port advertised for competitive bids as required by RCW 53.08.120-.130, and provided bidders with a 15-page document entitled "Bid for Unit-Price Contract." By the terms of the bid form, the contemplated construction was broken down into seven categories as follows:

A. Earthwork and Yard Grading
B. Surfacing, Paving and Curbing
C. Fencing
D. Sanitary and Storm Sewers
E. Water Distribution and Appurtenances
F. Trackwork
G. Electrical

Each of the categories was further broken down into numbered units and bidders were required to bid a dollar amount for each of 117 separate items. Each bidder agreed "to construct the project in accordance with the contract documents, within the time set forth therein, *and at the prices stated below*." (Italics ours.) The bid form further provided that "[t]he above *unit prices* shall include all labor, materials, bailing, shoring, removal, overhead, profit, insurance, etc., *to cover the finished work of the several kinds called for*." (Italics ours.) The port reserved the right to reject any or all bids.

At an appropriate place in the bid form there was provided space for totaling the amount of the bids. Red-Samm totaled the 117 unit prices of "Items A through G" to be $2,631,712.90. The news story which the trial judge considered as evidence concerned the public bid opening and

reported that Red-Samm's $2,631,712.90 bid "was the low of five bidders."

After the formal bid opening, the port determined that the correct total of Red-Samm's unit price bids was $2,535,062.56 ($96,650.34 less than the total of Red-Samm's bids). Thereafter, according to the stipulation as to agreed facts, Red-Samm undertook to persuade the port to accept the higher figure as its "bid" after explaining "where the discrepancy occurred."

The stipulation as to agreed facts and the record on appeal provide us no explanation concerning the discrepancy beyond the obvious conclusion that the unit bid amounts were erroneously totaled by Red-Samm.

The port refused to award the contract at the higher figure and "gave [Red-Samm] the option of accepting the award at the lower sum, or risking forfeiture of its [bid] bond." It is stipulated that Red-Samm then accepted the port's tender of the award at the $2,535,062.56 figure, reserving its right "to bring legal action for the purpose of recovering the additional sum of $96,650.34." A formal contract at $2,535,062.56 was executed and performed by Red-Samm.

In its complaint, Red-Samm alleges that it entered into the contract at the lower figure "under duress of these circumstances." It asserts that "[e]quity should not permit a contracting party to 'snap-up' an offer which it knows to be mistaken, and by duress of economic retaliation, unjustly benefit itself."

The record on appeal is silent as to the trial judge's reasons for granting Red-Samm's motion for summary judgment. Red-Samm's trial brief, which the trial judge considered, may fairly be summarized as a plea for equitable relief because of an error in the preparation of its bid. The issue which we consider to be controlling was not briefed or argued. It was, however, tendered by Red-Samm's complaint. Red-Samm asked to be relieved of its agreement to perform the contract at the lower figure because it contracted under the compulsion of duress.

■ Under compelling circumstances, equity's abhorrence of forfeiture may be invoked to relieve a public works bidder from the consequences of his erroneous bid by denying forfeiture of his bid bond. *Puget Sound Painters, Inc. v. State,* 45 Wn.2d 819, 278 P.2d 302 (1954).

> Equity has the same power to relieve from forfeitures provided for by statute as it has to relieve from forfeitures provided for by ordinary contract.

*Donaldson v. Abraham,* 68 Wash. 208, 211, 122 P. 1003 (1912).

However, facts which will persuade equity to deny forfeiture will not necessarily support a judgment for affirmative relief.

■ Red-Samm could have refused the port's tender of the contract award at the lower figure and asserted any equitable defenses it might have in the event that the port sought forfeiture of its bid bond. Red-Samm elected, however, to accept the contract at the lower figure. Under these circumstances, it cannot claim duress. It is not duress to threaten to do what one has a legal right to do. 25 Am. Jur. 2d *Duress & Undue Influence* § 18 (1966).

> Dangerous, indeed, would be the doctrine that contracts could be repudiated at will, when entered into by competent and capable men of comprehensive experience and sound judgment. If, in fact, they became the victims of duress, they cannot at the same time ratify, and bide their pleasure to disavow their act. A threat of litigation by one who has a legal right to sue, is not generally held to be duress within the meaning of the law.

*Walla Walla Fire Ins. Co. v. Spencer,* 52 Wash. 369, 373, 100 P. 741 (1909). *Accord, Zent v. Lewis,* 90 Wash. 651, 156 P. 848 (1916); *Cornwall v. Anderson,* 85 Wash. 369, 148 P. 1 (1915).

■ Under appropriate circumstances, equity will reform a contract to express the true intention of the parties. *Thorsteinson v. Waters,* 65 Wn.2d 739, 399 P.2d 510 (1965); *J.J. Welcome & Sons Constr. Co. v. State,* 6 Wn. App. 985, 497 P.2d 953 (1972). But Red-Samm's contract expressed

the true intention of the parties. There is no occasion for reformation. In *J.J. Welcome & Sons Constr. Co. v. State, supra,* a typographical error by Western Union resulted in a bid which was $10,000 lower than the bidder intended. As here, the bidder learned of the error shortly after the bids were opened. The State Highway Department tendered the contract to the bidder at the lower figure and the bidder accepted and performed, although it had already commenced an action to reform the contract. In language appropriate to this case it was held: .

> The thrust of appellant's contentions is that it could have rescinded the contract without forfeiture of its bid bond (*Puget Sound Painters, Inc. v. State, supra*) and the state would then be required to accept the next lowest bid, which was approximately one-quarter million dollars higher. Disregarding the alternative that the state might also, under those circumstances, reject all bids and issue a new call, and disregarding further the fact that the legislature has foreclosed acceptance of any post-opening revision of a bid on a highway contract, the simple answer to appellant's contention is that granting reformatory relief in this instance would open the door in a sensitive area to factual review of bidletting procedures which would adversely invade the safeguards surrounding the competitive bidding system and the confidence which contractors and the public have in its fairness. A reasonably efficacious competitive bidding system contemplates a fair forum for contractors desiring to undertake public projects and, through such a forum, protection for the public that such work will be let to [a] responsible bidder at the best available price.

*J.J. Welcome & Sons. Constr. Co. v. State, supra* at 989. In *Lemoge Elec. v. County of San Mateo,* 46 Cal. 2d 659, 665, 297 P.2d 638 (1956), under similar circumstances, a public works contract bidder sought reformation of its contract. It was there ruled that:

> Plaintiff had a remedy, which it chose not to exercise, that would have relieved it of any hardship that could result from its error. However, instead of rescinding, plaintiff, with full knowledge of its mistake, proceeded to perform the contract, and it cannot now compel defend-

ant to pay the amount which it claims it intended to bid or obtain recovery on a quasi contractual basis as if no contract existed. Such a result would not only be contrary to settled legal principles, but it would also create uncertainty and confusion in the field of competitive bidding.

Red-Samm cannot have its cake and eat it too. It elected to accept and perform the contract rather than chance that equity might *not* deny the port the right to forfeit Red-Samm's bid bond.

The judgment in Red-Samm's favor is reversed and the case is remanded to the trial court for the entry of summary judgment of dismissal.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied June 6, 1973.

Review denied by Supreme Court August 27, 1973.