## CLINTON COUNTY v AMERICAN BANK & TRUST COMPANY

Docket Nos. 77-413, 77-457. Submitted February 8, 1978, at Detroit.—
Decided May 9, 1978. Leave to appeal applied for.

In 1972, the Clinton County Department of Public Works was
accepting bids for the construction of the DeWitt Township
Sanitary Sewer Project, Phases I and II. Lowell C. Smith, doing
business as Smith Engineers & Contractors, submitted the
lowest bid. The contract was awarded to Smith Engineers &
Contractors, despite the fact that prior to the date of the award
Mr. Smith informed the board of the Clinton County Depart-
ment of Public Works that he had made a mistake in preparing
his bid. Smith Engineers & Contractors refused to perform
under the contract. The Department of Public Works com-
menced a breach of contract action against American Bank &
Trust, as executor of the estate of Lowell C. Smith, who had
died subsequent to the awarding of the contract, and against
the American Casualty Company of Reading, Pennsylvania, the
issuer of a performance bond which had accompanied the bid
by Smith Engineers & Contractors. Clinton Circuit Court, Leo
B. Bebeau, J., entered judgment for plaintiff for the amount of
the performance bond. Defendants appeal. *Held:*

The trial court should have allowed defendant Smith to
withdraw from the contract since the board had chosen to try
to take advantage of the mistake after Mr. Smith had given
notice of the mistake and the intention to rescind. This also
relieves the surety of its liability under the contract.

Reversed.

1. CONTRACTS—EQUITY—MISTAKE—LACK OF GROSS NEGLIGENCE—STA-
TUS QUO.

Equity will interfere, in its discretion, to prevent an intolerable
injustice in a contractual relationship where a mistake is of so

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Cancellation of Instruments §§ 31, 33, 34, 37.
    17 Am Jur 2d, Contracts § 143.
[2] 13 Am Jur 2d, Cancellation of Instruments § 32.
    17 Am Jur 2d, Contracts §§ 146, 485.

fundamental a character that the minds of the parties in fact have never met, or where an unconscionable advantage has been gained by mere mistake or misapprehension and there was no gross negligence on the part of the party making the mistake, either in falling into the error or in not claiming redress sooner, and no intervening rights have accrued and the parties may still be placed in status quo.

2. Contracts—Mistake—Unilateral Mistake—Rescission of Contract—Reformation of Contract.

  A mistake on one side in a contractual relationship may be grounds for rescinding a contract, but not for reforming it.

*Maples & Wood,* for plaintiff.

*Frank X. Fortescue, P. C.,* for defendants.

Before: N. J. Kaufman, P. J., and D. E. Holbrook, Jr. and D. F. Walsh, JJ.

Per Curiam. Plaintiff brought this breach of contract action on March 8, 1973, based on defendant Smith's refusal to perform under a contract awarded to him by plaintiff. Damages sought were $550,796.83, the difference between Smith's low bid and the next lowest bid. Accompanying the original bid was a performance bond issued by defendant American Casualty Company of Reading, Pennsylvania in the amount of $91,277.77 (5% of the Smith bid). On January 25, 1977, after a non-jury trial, judgment was entered in plaintiff's favor for $91,277.77. Defendants appeal.

In 1972, plaintiff was bidding the DeWitt Township Sanitary Sewer Project, Phases I and II. Plaintiff advertised for bids for the construction of this sewer system pursuant to certain specifications drawn by plaintiff's engineering consultant firm, Mick and Rowland of Angola, Indiana. De-

fendant Smith responded. Notice to bidders was published that bids would be opened on March 20, 1972.

Bids were in fact opened on March 30, 1972, and read by representatives of Mick and Rowland. Present at the bid opening were various members of the Board of Clinton County Department of Public Works, employees of the board, and on behalf of defendant, Smith Engineers & Contractors, the General Superintendent, Horace Jasman, and the Office Manager-Secretary, Shirley Wesley.

The bids that were opened appeared as follows:

| | | |
|---|---|---|
| 1. | Forsberg, Inc. | $3,561,707.05 |
| 2. | Barnhart Construction Co. | 3,044,375.10 |
| 3. | John Lango | 3,110,000.00 |
| 4. | Parsons | 2,994,226.80 |
| 5. | Fraser | 2,997,903.00 |
| 6. | Bay Construction Company | 2,875,100.00 |
| 7. | Delta Construction Company | 2,788,000.00 |
| 8. | Nelson | 2,702,712.00 |
| 9. | Fisher | 2,582,707.00 |
| 10. | Dunnigan | 2,567,481.00 |
| 11. | Ackron | 2,380,647.00 |
| 12. | DeWitt | 2,376,352.33 |
| 13. | Smith | 1,825,555.50 |

The bid openings reflected that defendant Smith's bid[1] was the lowest bid opened and was $550,796.83 lower than the next lowest bid. It should be noted that the third lowest bid of Ackron was only $4,294.67 higher than DeWitt's. There were no disputed facts regarding the bid opening, the bids as submitted, nor that the bid of defendant Smith was the lowest bid presented. Further, it is not disputed that defendant Smith was unaware of any error in his bid prior to the opening.

However, defendant-appellant surety contends on

---

[1] The Smith bid was prepared by Lowell C. Smith, now deceased.

appeal, as below, that Mr. Smith properly notified plaintiff of an error in the bid, prior to the *award* of the bid on April 6, 1972. It is admitted that there was no written notification but defendant-appellant surety claims that Mr. Smith attempted to inform plaintiff of his error by a telephone conversation to Mr. Dale Chapman, Chairman of the Board, as soon as he discovered the error. Mr. Jasman claims he overheard the conversation. Mr. Chapman does not recall any such conversation.

Defendant-appellant surety further claims that Mr. Smith made a subsequent call on April 2, 1972, to Mr. Mick at his home in Indiana. In his deposition, Mr. Mick remembered receiving a telephone call. However he claims that Mr. Smith did not indicate any error in his calculations and made no indication of his desire to rescind the bid.

There is no dispute that an informal meeting was held on April 3, 1972, in Dale Chapman's office; in attendance were Richard Mick, Lowell Smith, Dale Chapman, Paul Nobis and Bob Eldridge. Of those in attendance, testimony was taken and placed on the record of all but Lowell C. Smith, now deceased.

There is no question that Mr. Smith appeared at the gathering and did make mention of a possible mistake in his bid. What mention was made by Mr. Smith, and in what manner it was mentioned, is factually disputed. Messrs. Chapman, Nobis and Eldridge all testified that Mr. Smith exhibited a single adding machine tape, apparently to support an alleged error in his bid. All of the parties indicated that they did not personally view the tape. All parties further indicated the tape was not explained, nor expanded upon in any fashion by Mr. Smith, and that Mr. Smith made no mention at that time that the alleged error was due to his leaving out the restoration process, in its entirety, from his calculations. All par-

ties agreed that at this informal meeting no attempt was made by Mr. Smith to rescind his bid. No minutes were taken of the informal meeting.

The bid was formally awarded at the board meeting of April 6, 1972. None of plaintiff's witnesses have any independent recollection of what transpired at that meeting. The minutes themselves do not purport to be a verbatim transcript but rather are a summary of notes made by the secretary to the board.

The April 6 minutes, Exhibit 1 at trial, indicate the following, in part:

"Mr. Chapman then presented a number of objections to accepting the low bid of Smith Engineering Co. on Phase II and asked for consideration of the matter of acceptance or rejection of the bid. Mr. Mick interjected the thought that Mr. Smith might very well accept the contract at his low bid citing the fact that the overall average per foot price as bid is $17.16 which, in his opinion, is a legitimate price. The question of the legitimacy of the bid bond was then raised and it was the expressed opinion of both attorneys present that the bond, as offered, could be enforced. After some further discussion on the matter, the following motion was offered by Member Nobis, supported by Member Chamberlain:

" 'RESOLVED THAT:

1. The contract for construction of Phase II, Clinton County Sanitary Sewage Disposal System No. 1, Township of DeWitt, be awarded to Smith Engineering and Contractors in accordance with the bid received from said contractor on 30 March 1972.

2. The contract shall not become effective until the proceeds from the sale of the bonds for this project have been received by the Department of Public Works and until it shall have given the contractor notice to proceed with performance of the contract.

3. The contract shall be submitted to the contractor for signature immediately.

A roll call vote gave the following results:

    3 members voted 'aye'

1 member was absent
0 members voted 'nay'
The motion was declared to be carried by the Chairman."

A number of other matters were disposed of. Then, the minutes relate:

"Upon return to the meeting, Mr. Smith entered the room and Mr. Green at once informed him that the Board had awarded him the contract at his bid price presented at the letting held on 30 March 1972. Mr. Smith countered by asking Mr. Green if the Board or he had been informed of any variances in the bids and was told that no significant differences had been noted other than might occur in any letting of bids. The Chair then asked Mr. Smith if he had any questions about the contract offered. Mr. Smith replied he thought he had raised a legitimate question concerning his bid at an informal meeting held in Mr. Chapman's office on the afternoon of Monday, 3 April 1972 which meeting was attended by Mr. Chapman, Mr. Nobis, Mr. Mick and Mr. Eldridge. He further stated he had made an error in his bid and had so informed those in attendance at that meeting. Mr. Smith then cited what he believed to be legal reasons as to why he should be relieved of his obligation of his bid. Mr. Green said those reasons were legal points only and were subject to interpretation. Mr. Green further stated we were not here to argue points of law but to award a contract. Mr. Smith intimated that he might carry the case to the courts but would rather not. After some further discussion, Mr. Smith asked if their *[sic]* were any further questions to be asked of him before he left the meeting. Mr. Green asked if Mr. Smith cared to indicate at this time whether or not he intended to sign the contract or did he desire more time to consider. Mr. Smith countered by stating he desired to go on record as having informed the consulting engineer on Sunday night, 2 April 1972, of a mistake he, Mr. Smith, had made in addition in submitting his bid and that again on Monday, 3 April 1972 at 4:30 P.M. he had informed Mr. Nobis, Mr. Chapman—Board Members; Mr. Mick—Consulting engineer and Mr. Eldridge, Deputy Secretary of this same error in his own calculations. Mr. Green again asked if Mr. Smith intended to sign

the contract and again Mr. Smith did not respond directly. After some further comments, Mr. Smith stated that the Board would hear from him within ten days and, after a few more comments, he left the meeting."

The trial court in a well written opinion stated it chose to believe appellee's witness and not appellants' witnesses. However, the meeting was still in progress at the time Mr. Smith entered and the board could have and should have reconsidered its acceptance. It seems to us that the calling of the informal meeting of April 3 after the phone call to Mr. Mick on April 2 must have given the parties at the April 3 meeting notice of defendant Smith's intention to rescind. Further, the minutes of the April 6 meeting clearly show that the board itself had some doubts of defendant Smith's intention to accept the award, since the board's attorneys requested that the board ask Mr. Smith if he would sign the contract. This question was asked of Mr. Smith as soon as he entered the meeting.

We note that the board could have accepted defendant Smith's bid with the error corrected (which would still be less than the second lowest bid) or it could have asked Mr. Smith if he would compromise the mistake or it could have rejected the bid. Instead, the board chose to try to take advantage of the mistake. We cannot tolerate the injustice which was perpetrated on defendant Smith.

As stated in *Fraser Public Schools Dist v Kolon,* 35 Mich App 441, 443; 193 NW2d 64 (1971), *lv den,* 386 Mich 768 (1971):

"We do no violence to the settled principle that the findings of fact of a trial judge, sitting as trier of the facts, will not be set aside unless clearly erroneous, because we reverse for an error of law. We believe the learned trial judge misapplied the applicable law to his found facts."

*Kutsche v Ford,* 222 Mich 442, 449; 192 NW 714 (1923), succinctly explains the applicable legal principles:

" ' "We think that the facts herein bring the case within this principle governing a unilateral mistake stated in 1 Story, Equity Jurisprudence (12th Ed.), § 138:

" ' " 'But where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner claiming redress; and no intervening rights have accrued; and the parties may still be placed *in statu quo;* equity will interfere, in its discretion, to prevent intolerable injustice.' * * * In *Hearn v. Insurance Co.,* 20 Wall. ([87] U.S.) 488 [22 L Ed 395 (1874)], it is said:

" ' " 'A mistake on one side may be ground for rescinding, but not for reforming, a contract.' " ' "

We therefore hold that the trial court should have allowed defendant Smith to withdraw the contract, which would relieve the surety of its liability under the contract. Accordingly, we reverse the judgment against defendant-appellant surety as a matter of law.

It should be noted in passing that this case is substantially similar to *Puget Sound Painters Inc v State of Washington,* 45 Wash 2d 819, 823; 278 P2d 302, 304 (1954), wherein it was held:

"that equity will relieve against forfeiture of a bid bond (a) if the bidder acted in good faith, and (b) without gross negligence, (c) if he was reasonably prompt in giving notice of the error in the bid to the other party, (d) if the bidder will suffer substantial detriment by forfeiture, and (e) if the other party's status has not greatly changed, and relief from forfeiture will work no substantial hardship on him."

Accord: *Utah v Union Construction Co,* 9 Utah 2d 107; 339 P2d 421 (1959).

Reversed. Costs to appellants.