[No. 5320–1.   Division One.   September 25, 1978.]

THE TOWN OF LA CONNER, *Appellant,* v. AMERICAN
CONSTRUCTION CO., INC., ET AL,
*Respondents.*

*Michael L. Lewis,* for appellant.

*Franklin & Watkins* and *Ralph E. Franklin,* for respondents.

DORE, J.—Plaintiff Town of La Conner sued American Construction Company, Inc., and Safeco Insurance Company of America for forfeiture of a bid bond posted by the defendants in connection with American's bid on a municipal sanitary sewer system. The trial court held for the defendants. Plaintiff appeals. We affirm.

## ISSUES

ISSUE 1: Was there substantial evidence to support the trial court's judgment of dismissal?

ISSUE 2: Did the trial court err in finding that American Construction Company had made an "error," and in holding that such defendants acted in complete good faith, without negligence and had promptly notified plaintiff on discovering the error, and consequently its bid bond should not be forfeited?

ISSUE 3: Did the trial judge err in admitting into evidence defendants' exhibit No. 17?

## FACTS

The trial court's findings of fact Nos. 2, 3, 4 and 5 are unchallenged and, therefore, will be considered verities. They are succinctly stated and we believe it would be helpful to set them forth in text.

Finding of fact No. 2:

On or about June 13, 1974, plaintiff issued a call for bids for Sewerage and Water System Improvements, Schedules 1 through 5. Bid opening was set for July 15, 1974. Specifications for the project work and drawings were prepared by plaintiff's authorized engineers, Stevens, Thompson & Runyan. Prior to bid date, plaintiff issued Addendum No. 1 dated July 10, 1974, and Addendum No. 2 dated July 11, 1974, to the Specifications. Defendant American obtained a copy of the Specifications, Drawings, Addendum and Bid Forms for the purpose of considering submitting a bid.

Finding of fact No. 3:

On July 15, 1974, defendant American submitted a bid upon Schedule 5, together with a Bid Bond in the amount of 5% of its bid, which bond was furnished by

defendant Safeco, as surety. The bids were opened on July 15, 1974, and bids were received upon Schedule 5 as follows, together with the plaintiff's engineer's estimate.

| | |
|---|---:|
| Plaintiff's Engineer's Estimate | $200,109.00 |
| AMERICAN | 171,530.62 |
| A. H. Powers, Inc. | 241,445.40 |
| Snelson, Inc. | 247,120.15 |

The bids and plaintiff's engineer's estimate for Item No. 5, 6" channel crossing, were as follows:

| | |
|---|---:|
| Plaintiff's Engineer's Estimate | $105,000.00 |
| AMERICAN | 35,000.00 |
| A. H. Powers, Inc. | 80,000.00 |
| Snelson, Inc. | 132,250.00 |

Finding of fact No. 4:

When defendant American learned of the bid results, it noted the large discrepancy between its bid, the other bids and the plaintiff's engineer's estimate. It then reviewed its bid and the Specifications and Drawings and Addendums and considered that the Specifications with respect to Item No. 5 were confusing and subject to interpretation other than as defendant American had interpreted it, and that if its interpretation was not correct, then it had made an error in its bid.

Finding of fact No. 5:

Under date of July 22, 1974, defendant American informed plaintiff by letter (Exhibit No. 10) of its interpretation of the Specifications and pointed out the confusion and directed that its bid should be disregarded unless its interpretation as described was acceptable to plaintiff for performance of the contract work. Plaintiff did not make any response to defendant American's July 22, 1974, letter under September 19, 1974. The Specifications were confusing, largely as a result of the change made in the Specifications by Addendum No. 2. The Specifications provided that plaintiff had procured a permit from the Army Corps of Engineers for performance of the channel crossing work. *In fact, no such permit had been then obtained, and none was issued for the work until August 19, 1974.* The Specifications required the contractor to perform the channel crossing work in

accordance with the Corps of Engineers permit. *The conditions of the Corps of Engineers permit conflicted with the Specifications* as amended by Addendum No. 2. (Italics ours.)

Without making any response to defendant American's letter on August 20, 1974, plaintiff accepted the bid of American and notified such defendant that it was awarded the contract and directed it to prepare a contract in the amount of its bid. American refused because of the error in its bid. Plaintiff then awarded the contract to the second bidder, A. H. Powers, Inc., for the precise amount of the latter's bid. Powers subsequently completed the contract work.

## DECISION

▉▉▉ ISSUES 1 and 2: *Clover Park School Dist. 400 v. Consolidated Dairy Prods. Co.,* 15 Wn. App. 429, 433, 550 P.2d 47 (1976), set forth the guidelines the court should follow in determining whether or not a successful bidder would be able to rescind a bid contract and avoid forfeiture of his bid bond. On pages 433–35 the court stated:

> The propriety of relief from a contract when a mistaken bid calculation is promptly made known to the offeree is discussed in *Donaldson v. Abraham,* 68 Wash. 208, 122 P. 1003 (1912) and *Puget Sound Painters, Inc. v. State,* 45 Wn.2d 819, 278 P.2d 302 (1954). In those cases, erroneously computed bids were submitted to governmental entities along with mandatory bid bonds, and the error in each case was immediately made known to the offeree. The bidder in each case was successful in preventing forfeiture of its bid bond.
>
> In *Puget Sound Painters, Inc. v. State, supra,* the court set forth guidelines as to when forfeiture of a bid bond should be enjoined—and by clear inference, when a bid contract can be rescinded—where a unilateral and material mistake is made in the offeror's bid and the error is called to the attention of the offeree before he has changed his position in reliance thereon. Under these guidelines relief will be decreed:
>
> (a) if the bidder acted in good faith, and (b) without gross negligence, (c) if he was reasonably prompt in

giving notice of the error in the bid to the other party, (d) if the bidder will suffer substantial detriment by forfeiture, and (e) if the other party's status has not greatly changed, and relief from forfeiture will work no substantial hardship on him.
*Puget Sound Painters, Inc. v. State, supra* at 823.

. . .

However, rescission of an agreement once made must be prompt upon discovery of the facts warranting such an action. *Bayley v. Lewis,* 39 Wn.2d 464, 236 P.2d 350 (1951). When a party fails to take steps to rescind within a reasonable time and instead follows a course of conduct inconsistent therewith, the conclusion follows that he has waived his right of rescission and chosen to continue the contract. *Fines v. West Side Implement Co.,* 56 Wn.2d 304, 352 P.2d 1018 (1960); *Coovert v. Ingwersen,* 37 Wn.2d 797, 226 P.2d 187 (1951); *Prager's, Inc. v. Bullitt Co.,* 1 Wn. App. 575, 463 P.2d 217 (1969); *see* 5 S. Williston, *A Treatise on Law of Contracts* § 688 (3d ed. 1961).

At this point we wish to parenthetically state our view that sound public policy requires us to closely scrutinize a bidder's contention that it intended to rescind its bid on a contract with an agency of government. It should be difficult for low bidders to claim an error in computation as the basis for escaping from a bid noticeably lower than the competition's. This is the "bad faith" element of the test quoted above. *Puget Sound Painters, Inc. v. State, supra* at 822. Having stated this general concern, however, we hasten to add there is absolutely no reason to infer that Darigold's bid in this case was the product of anything but clerical error.

In *Clover Park School Dist. 400 v. Consolidated Dairy Prods. Co., supra,* the court found the dairy company had made an erroneous bid and would have been entitled to rescission but that the dairy company had waited too long in trying to avoid the contract. *See also Enrico v. Overson Constr. Co.,* 19 Wn. App. 483, 576 P.2d 75 (1978).

In item 5 of the contract where it was designated "6" channel crossing," it provided for the installation of a pipeline at a specified location in the bed of the Swinomish Channel. The specifications, as originally written, provided, "Backfill material shall be *bank run gravel.*" Addendum

No. 2 to the specifications (Exhibit 5) changed this specification to provide, *"Backfill material . . . shall be clean sand and/or gravel."* The appellant's engineer in referring to this change stated:

Our original specifications required gravel backfill in the underwater portion of the pipeline construction, but was changed to Addendum during the bidding period to allow clean sand and/or gravel. *It is our opinion that the material removed during the excavation process does meet the physical requirements for backfill material.*

(Italics ours.) Under the original specifications it was necessary to import backfill material. Under the specifications as modified by addendum No. 2, the excavated material could be used as backfill.

As noted in finding of fact No. 5:

The Specifications provided that plaintiff had procured a permit from the Army Corps of Engineers for performance of the channel crossing work.

And further:

The Specifications required the contractor to perform the channel crossing work in accordance with the Corps of Engineers permit. The conditions of the Corps of Engineers permit conflicted with the Specifications as amended by Addendum No. 2.

The town of La Conner had applied for the Corps of Engineers permit on February 4, 1974. On July 11, 1974, the town had issued addendum No. 2 to the contract specifications which changed the requirements with respect to the performance of the channel crossing work. However, the town of La Conner omitted to have the change made in the application for the Corps of Engineers permit. Consequently, when issued, the Corps of Engineers permit required performance of the channel crossing work in the manner stated in the contract specifications prior to the addendum change.

American, in making its bid, assumed that the town of La Conner had secured a Corps of Engineers permit in accordance with addendum No. 2 permitting reuse of excavated materials, and that is why they had estimated an

expense of $30,000. However, this was error for the specifications required by the Corps of Engineers permit mandated complete removal of the excavated material and the backfilling with new materials, which would have required an estimated expense of $90,473.

Realizing their predicament, American submitted the matter to the town of La Conner's engineer for interpretation. Although the town of La Conner did not respond in writing, Leonard Clark, La Conner's engineer, advised Brannon, defendant's president, that the bid specifications would be strictly enforced.

> A [Leonard Clark] Mr. Brannon informed us that he would not go ahead with the contract unless we agreed he would proceed on the basis that he had planned, which was side casting of the material. We informed him we understood his position and we also knew that, although the permit read that it had to be side cast— pardon me, had to be land disposed of—there had been several contracts where the Fisheries had looked the other way or allowed side casting during the process. *But the permit did not read that way and we had no authority to change that permit and, as far as we were concerned, the contract when signed would have to be signed as it stood, with the requirement of the permit in it which required land disposal.* If a change was made afterward, that would be when Mr. Brannon could take advantage of it but we had no way to alleviate or relinquish the requirements of the permit. We do not have that right and insisted we would have to go ahead with the requirement of the Department of Fisheries and Corps of Engineers' requirement in it.

(Italics ours.)

Obviously when American was told they had to assume that they would be required to complete the job in accordance with the Corps of Engineers permit which would have required the more expensive way of proceeding with item 5, it was clear to them that they had made a $55,000 error and

they immediately notified the town of La Conner that they would not proceed with the contract.

A review of the testimony of all witnesses, exhibits and bid specifications convinces us that there is substantial evidence to support the trial court's findings of fact and conclusions of law and judgment. We concur with the trial court that the defendant (a) acted in good faith, (b) without gross negligence, (c) was extremely prompt in giving notice of the bid error to the other party when discovered, (d) will suffer substantial detriment by forfeiture unless equity relieves it of forfeiture, and (e) at the time that the town of La Conner was informed of the defendant bidder's error, it would have suffered no substantial hardship because of defendant's withdrawal.

In hindsight it would appear that the town of La Conner caused its own damages, which might have been avoided had it not acted so precipitously in immediately accepting the defendant bidder's bid and demanding a bid contract. Had the town instead gone to the Army Corps of Engineers and secured a simple amendment to conform their permit to the town's specifications No. 2, which they did a few weeks later, undoubtedly defendant then would have accepted the plaintiff's offer to enter into a binding bid contract based on their original bid, and the taxpayers of the town of La Conner would have saved $89,925.

We hold that there was substantial evidence in the record to support the trial court's judgment of dismissal.

ISSUE 3: We also find that the admission of defendants' exhibit No. 17 into evidence was proper. The amount of the additional money that would be required by defendant in order to carry out the specifications of the contract in accordance with the town of La Conner's specifications rather than as provided in the Corps of Engineers permit was relevant as to whether an error had been committed by the defendant in making its bid and whether it was justified in not signing the bid contract.

Affirmed.

FARRIS, C.J., and CALLOW, J., concur.

Reconsideration denied November 16, 1978.

Review denied by Supreme Court March 16, 1979.