CITY OF WARREN v MACCABEES MUTUAL LIFE INSURANCE
COMPANY

Docket No. 77-1212. Submitted March 13, 1978, at Detroit.—Decided
May 10, 1978. Leave to appeal applied for.

The City of Warren requested bids for occupational disability
insurance for a three year term from July 1, 1973, to June 30,
1976. Maccabees Mutual Life Insurance Company was awarded
the insurance contract as the lowest responsible bidder with a
monthly rate of $.50 for each $10 of disability benefits. The
master policy submitted by the insurance company differed
from the specimen policy which had accompanied the bid in
that it called for annual adjustments of rates. The City of
Warren objected to the master policy arguing that it had
requested a quaranteed three-year rate. The City of Warren
commenced an action against Maccabees for a declaratory
judgment on the contract, claiming that the defendant knew or
should have known that a guaranteed rate was requested and
for damages. The trial court found the defendant responsible
for flagrant mishandling of the entire bid process and entered
judgment for plaintiff, Macomb Circuit Court, Raymond R.
Cashen, J. Defendant appeals. *Held:*

The reasonable interpretation of the specifications was that
the city was requesting a guaranteed rate and term. The
defendant was grossly negligent in interpreting the city's bid
request. Because of the defendant's gross negligence, which led
to the mutual mistake between the two parties, there was a
valid contract, despite the mutual mistake. Also, the defendant,
because of its gross negligence, cannot avoid the contract on
the basis of unilateral mistake.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 5] 13 Am Jur 2d, Cancellation of Instruments § 34.
[2] 56 Am Jur 2d, Negligence § 521 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error §§ 674, 825, 826, 839.
[4] 17 Am Jur 2d, Contracts § 146.
    54 Am Jur 2d, Mistake, Accident, or Surprise §§ 3, 7, 16–22
[5] 57 Am Jur 2d, Negligence § 1.
    54 Am Jur 2d, Mistake, Accident or Surprise § 22.
[6] 5 Am Jur 2d, Appeal and Error §§ 517, 602, 668 *et seq.*

1. CONTRACTS—MUTUAL MISTAKE—NEGLIGENCE.

No contract will be held to exist where each party to the "contract" is mistaken as to the meaning of the other party; however, this general rule is of no force or effect where one of the parties has been found negligent.

2. CONTRACTS—MUTUAL MISTAKE—NEGLIGENCE—FINDER OF FACTS.

The determination of negligence, in a contract action wherein it is claimed that there was a mutual mistake, is properly a question for the finder of fact.

3. APPEAL AND ERROR—TRIAL COURTS—FINDINGS OF FACT.

Factual findings by a trial court are not to be set aside unless they are clearly erroneous; a finding of fact will be deemed clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.

4. CONTRACTS—UNILATERAL MISTAKE—NEGLIGENCE.

A unilateral mistake will cause a contract formation to fail where the mistake is of so fundamental a character that the minds of the parties have never met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the party making the mistake, either in falling into the error or in not sooner claiming redress, and no intervening rights have accrued and the parties may still be placed in status quo.

5. CONTRACTS—NEGLIGENCE—MISTAKE—GROSS NEGLIGENCE—WORDS AND PHRASES.

The term "negligence", for purposes of deciding whether a party who has made a mistake in his negotiations when entering into a contract should be relieved of his obligation because of the mistake or should be bound by the contract because the mistake was a result of his negligence, generally means ordinary negligence, which will not necessarily bar granting equitable relief; otherwise qualified, it generally means carelessness or lack of good faith in calculation which violates a positive duty in making up a bid, so as to amount to gross negligence, or wilful negligence, when it takes on a sinister meaning and will furnish cause, if established, for holding a mistake of the offending bidder to be one not remediable in equity; it is thus distinguished from a clerical or inadvertent error in handling

items of a bid, either through setting them down or transcription.

6. APPEAL AND ERROR—PRESERVING ISSUE—EVIDENTIARY ISSUES.
   Questions relating to evidentiary issues will not be reviewed on appeal unless there is an objection at trial.

*W. Thomas Marrocco, Jr.* (by *John J. Murray*), for plaintiff City of Warren.

*Cooper, Shifman & Gabe,* for plaintiff Republic Underwriters, Inc.

*Alexander B. Ritchie, Patricia S. Fletcher* and *Michael A. McGrath,* for defendant.

Before: R. M. MAHER, P. J., and V. J. BRENNAN and N. J. KAUFMAN, JJ.

PER CURIAM. The Maccabees Mutual Life Insurance Company appeals the judgment entered April 4, 1977, after a bench trial, in which the court awarded the City of Warren $120,223.71 plus interest.

The issue in this case is who should bear the loss for the misunderstanding between the parties over the interpretation of an insurance bid request.

In May, 1973, Warren submitted a request for public bidding on its occupational disability insurance. The city specified that the term of the insurance was to be from July 1, 1973, to June 30, 1976. Defendant insurer was the lowest bidder with a monthly rate of $.50 for each $10 of disability benefits. Maccabees Mutual was awarded the contract by the City of Warren as the lowest responsible bidder.

Shortly after the policy took effect, defendant sent plaintiff a master policy to replace the specimen policy which had been submitted with the

bid. Contrary to practice in the insurance industry, the master policy differed from the specimen policy: the new policy contained an additional clause calling for annual adjustment of premiums.

Plaintiff objected on the grounds that the bid specification had requested a three year guaranteed rate. Defendant responded that all plaintiff city had requested was a three year guaranteed term, not a guaranteed three year rate, and, accordingly, the bid had been submitted with that understanding.

When the parties' differences could not be resolved through negotiations, plaintiff filed a complaint for declaratory judgment. In December, 1974, Maccabees was ordered to continue coverage on Warren employees until the City of Warren could get a new carrier. The judge further ordered Warren to pay $.98 per $10 of benefits, defendant's rate for the second year. Plaintiff switched companies for the third year and obtained a one year policy with Northwestern National Life Insurance Company for $.83 for $10 of disability benefits.

At trial plaintiff claimed that defendant knew or should have known that a guaranteed rate was requested. At the trial's conclusion, the court found defendant "responsible for flagrant mishandling of the entire bid process". It held that there had been no mutual mistake and that due to defendant's negligence, defendant's unilateral mistake in misinterpreting the contract did not serve to invalidate it. Defendant appeals from the judgment entered for plaintiff City of Warren.

Maccabees contends that the bid specifications issued by the City of Warren were inherently ambiguous and susceptible to two different interpretations; that since each party interpreted the bid language differently, there was no "meeting of

the minds". Under the doctrine of mutual mistake, Maccabees claims, the contract was not enforceable and defendant cannot be held liable for damages.

Corbin discusses the nature of mutual mistake in his treatise on contracts.

"A case that occurs more frequently is one in which each party misunderstands the expressions of the other. An offer is made in terms that the offeree misunderstands; and the latter accepts in terms that the former understands as an assent to the offer that he meant to make. In a case like this, each party is mistaken as to the meaning of the other; and sometimes this is not discovered until after important changes of position have taken place. It is very clear that no contract should be held to exist unless one of the parties so negligently expressed himself that the other was caused reasonably to believe that agreement existed. For performance rendered in such a case, recovery must be quasi-contractual in character, generally based upon the value of benefits actually received by the other party." Corbin on Contracts (One Volume ed), § 599, p 544.

Each side in this dispute offered witnesses expert in the field of insurance. James McKay, produced by the City of Warren, testified that the fixed three year term language of the bid request could be interpreted only one way—as a request for a guaranteed three year term rate. Defendant's expert, Paul Arthur, stated that the specification in the bid was capable of two interpretations: first, that plaintiff requested only a guaranteed term or, second, that plaintiff requested both a guaranteed term and a guaranteed rate. Under defendant's first interpretation, the insurer would guarantee plaintiff insurance for three years but could vary

the rate annually to reflect its experience with the insured.

According to Corbin, when each party is mistaken as to the meaning of the other, as in this case, no contract will be held to exist. However, this general rule is of no force or effect where one of the parties has been found negligent.

"When one party, in expressing his assent, so negligently chooses his words that the other reasonably gives them a meaning different from the one intended, a valid contract is often held to have been made, in spite of the fact that * * * both parties are making a mistake. * * * [B]oth parties believe that there is agreement in meaning, that the other party means the same as himself. * * * [T]he parties are mutually mistaken, though their mental errors are not quite identical. In spite of this "mutuality," there is a contract, due to the negligence of the one and the reasonableness of the other." 3 Corbin on Contracts, § 608, p 671.

The trial court in this case found defendant grossly negligent. If the trial court's finding is correct, a contract does exist, despite the mutual mistake of the parties.

At the outset, we recognize that the determination of negligence is properly a question for the fact finder. *Ingram v Henry,* 373 Mich 453; 129 NW2d 879 (1964). Here the trial court sat as the finder of fact. Factual findings by the trial court will not be set aside unless they are clearly erroneous. *Eberhard Manufacturing Co v Brown,* 61 Mich App 268; 232 NW2d 378 (1975), *Muskegon v Lipman Investment Corp,* 66 Mich App 378; 239 NW2d 375 (1976). A finding of fact will be deemed "' "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed' ".

*Tuttle v Dept of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), quoting *United States v United States Gypsum Co,* 333 US 364; 68 S Ct 525; 92 L Ed 746 (1948).

We are unable to say that the trial court's findings were erroneous. The record amply supports the finding that Maccabees was grossly negligent.

Defendant's own witness said that defendant's underwriting was sloppy. According to the witness, language of the sort found in the bid request could just as easily be interpreted to mean guaranteed rate and term, as to mean merely guaranteed term. He stated that the insurer should have clarified the term before bidding or that a deviation from the specification should have been written into the bid.

The testimony given by the insurer's witness discloses there is little reason for a city to request a three year guaranteed term without also requesting a guaranteed rate, since in simple guaranteed term contracts the benefits flow almost exclusively to the insurer without any correlative benefit to the city. The city, beyond the first year, would be at the mercy of the insurance company, which could raise rates in subsequent years if it found that it had underestimated its rates in the first year. This is, in fact, precisely what Maccabees Mutual did in this case, almost doubling its rates for the second year.

It is only to be expected that one versed in the language of insurance would realize that a city would not volunteer to be put in as precarious a position as Warren found itself. It would, therefore, seem reasonable that the insurer require its interpretation of the city's bid request to be carefully checked and verified. It is just such reasoning

which may have led defendant's own witness to declare that although two interpretations of the specifications are possible, he would assume that if there were a three year contract, there would also be a three year rate.

The reasonable interpretation of the specifications was that the city was requesting a guaranteed rate and term. Defendant was negligent in interpreting the city's bid request otherwise. The doctrine of mutual mistake is not applicable in this case.

Defendant Maccabees also contends that a valid contract does not exist because of a unilateral mistake on its own part. It is true that a unilateral mistake will, at times, cause contract formation to fail.

In *Kutsche v Ford,* 222 Mich 442; 192 NW 714 (1923), the Supreme Court propounded the test for determining when a mistaken bid would invalidate a contract.

" 'Where a mistake is of so fundamental a character that the minds of the parties have never, in fact, met, or where an unconscionable advantage has been gained, by mere mistake or misapprehension; and there was no gross negligence on the part of the plaintiff, either in falling into the error or in not sooner claiming redress; and no intervening rights had accrued; and the parties may still be placed *in statu quo;* equity will interfere, in its discretion, to prevent intolerable injustice.' " *Kutsche* at 449, quoting 1 Story, Equity Jurisprudence (12th ed) § 138.

See, also, *Union & People's National Bank v Anderson-Campbell Co,* 256 Mich 674; 240 NW 19 (1932).

Gross negligence has been defined in subsequent cases.

" 'The term "negligence", or its equivalent, in this connection generally means ordinary negligence, which will not necessarily bar granting equitable relief. Otherwise qualified, it generally means carelessness or lack of good faith in calculation which violates a positive duty in making up a bid, so as to amount to gross negligence, or wilful negligence, when it takes on a sinister meaning and will furnish cause, if established, for holding a mistake of the offending bidder to be one not remediable in equity. *It is thus distinguished from a clerical or inadvertent error in handling items of a bid, either through setting them down or transcription.' " Fraser Public Schools Dist v Kolon,* 35 Mich App 441, 445; 193 NW2d 64 (1971), quoting Anno: *Rights and remedies of bidder for public contract who has not entered into a contract, where bid was based on his own mistake of fact or that of his employees,* 52 ALR2d 792, 794. (Emphasis in 52 ALR2d.)

As discussed above, defendant was guilty of gross negligence. Maccabees carelessly misinterpreted the language of the bid request. It is thus foreclosed from relying upon the unilateral mistake rule set forth by this Court. *Clinton County Department of Public Works v American Bank & Trust Co,* 83 Mich App 259; 268 NW2d 367 (1978).

In addition, unlike the party in *Kutsche,* the City of Warren, because it had already lost the opportunity to award the contract to the second lowest bidder, cannot be returned to the status quo. All the other bids had been cancelled. The city would have had to reopen the bidding procedure and absorb the costs inherent in such a process. Nor was there any guarantee that the bids received after a new procedure would have been as favorable as the ones cancelled. After the error was discovered, the parties could not have been placed in the status quo. See *Fraser Public School District v Kolon, supra.* Since Maccabees is guilty of gross negligence and since the city of Warren cannot be placed in the status quo, under

the two-pronged test of *Kutsche,* Maccabees cannot rescind the contract because of its unilateral mistake.

Maccabees cites two other issues through which it seeks to avoid the lower court's award of damages. First, it claims that the City of Warren failed to make its bid specifications sufficiently clear so that defendant insurer could intelligently bid on the contract. While a clearer bid specification could have been written, the specification given was sufficiently clear to apprise the average insurance bidder of the nature of the contract requested.

Defendant's own expert stated that although the specification could be interpreted to mean either a guaranteed rate and a guaranteed term or simply a guaranteed term, it was at least sufficiently clear to put defendant on notice to inquire about the intended interpretation and defendant performed an inadequate job by not doing so. Defendant's expert stated that although two interpretations were possible he would assume that such specifications requested a guaranteed rate. The bid specification was sufficiently clear. No reversal is required on this ground.

Finally, defendant argues that the trial court's judgment be reversed because the plaintiff's expert witness was allowed to testify without being qualified as an expert. Moreover, the expert erroneously used parol evidence, custom and usage to vary the terms of an otherwise unambiguous contract. These issues, however, are raised for the first time on appeal. Defendant never objected at trial to the witness's qualifications or to his testimony. Unless there is an objection at trial, questions relating to evidentiary issues will not be reviewed on appeal. *Chaney v Lake Drive Garage,* 252 Mich 412; 233 NW 602 (1930).

Affirmed.